MARSHALL A. THURMAN V. STATE OF NEBRASKA.

[FILED JUNE 30, 1891.]

1. **Criminal Law**: MOTIVES NEED NOT BE SPECIFICALLY PROVED.
If the criminal act charged, and the criminal agency of the pris-
oner, are shown beyond doubt by direct or circumstantial evi-
dence, *held*, that it is not required that there be specific proof of
motives.

2. ———— : INSANITY: INSTRUCTIONS as to the criminal responsibil-
ity of parties laboring under insanity and insane delusions, ex-
amined, considered, and *held* to be correctly given.

3. ———— : ERROR: WAIVER. *Held*, That error of trial not excepted
to, nor assigned on the motion for new trial, in the court below,
will not be considered as reversible error on review.

4. ————: THE EVIDENCE examined, and *held* to sustain the verdict.

ERROR to the district court for Johnston county. Tried
below before BROADY, J.

*Daniel F. Osgood,* for plaintiff in error, cited: *People v.
Sweeney,* 22 N. W. Rep. [Mich.], 50; *Curry v. State,* 4
Neb., 545; *Marion v. State,* 20 Neb., 233; *State v. Kegan,*
62 Ia., 106; 2 Thompson, Trials, 1695.

*William Leese, Attorney General, contra,* cited cases re-
ferred to in opinion.

COBB, CH. J.

On May 9, 1889, the plaintiff in error was indicted by
the grand jury for shooting with intent to kill, on Jan-
uary 26, 1889, in said county, one Thomas B. Parker. He
was tried and convicted at the May term, 1889, of the dis-
trict court, and sentenced to the penitentiary. This sen-
tence was reversed on error October 19, 1889, for the
incompetency of a juror impaneled in the case (27 Neb.,

628), and further proceedings ordered in the court below. He was again tried to a jury and convicted November 19, 1889, and sentenced to a term of three years in the penitentiary. To reverse this sentence, on a petition in error, the following causes are assigned :

1. The verdict is not sustained by sufficient evidence, and is contrary to law.

In support of this objection, it is argued that there is no evidence of any motive of the prisoner to commit the offense charged, but that he was wholly friendly to Parker, and could have had no reasons for suspecting that Parker had any money, or anything else that it would be any advantage for him to obtain, by committing the murder.

It may be answered to this objection, that the court in its instruction No. 2 told the jury correctly, that " The law presumes that a person intends the natural and probable consequences of an act willfully and purposely done, unless the evidence shows to the contrary."

The case of *Curry*, 4 Neb., 545, cited by the counsel, is not applicable, because its instruction to the jury carried the presumption beyond the result of the act done, while the instruction cited covers the actual result and no more. It is argued that the state failed to show a *motive*. But is it necessary to show the essential impulse and mental conception of the prisoner, which was the actual inducing cause of the crime? We think that the metaphysical process is not demanded. If the act charged, and the criminal agency of the prisoner, are shown beyond doubt, even by circumstantial evidence, it is not necessary that there be further proof of motive. (*Green v. State*, 38 Ark., 315; *Clifton v. State*, 73 Ala., 474; *McLain's Case*, 99 Pa. St., 86; *Preston v. State*, 8 Tex. App., 30; Burrill's Crim. Ev., 314–15.)

If no motive appears in evidence, the failure of proof is relied on for acquittal at the trial; but where the proof is such that the jury are satisfied of the guilt of the prisoner beyond a reasonable doubt, it cannot avail, as an error for

the reversal of sentence, that no motive was shown by proof to the jury.    The first error is overruled.

The second error is that of the reply of the witness Snyder to the Q. What would be the probable and most natural result of a bullet from a 32-calibre revolver in that part of the head? A. In this case it was recovery.   It does not appear that the prisoner's defense was in the least prejudiced by this evasive answer, but practical illustration of the result.   The second error is overruled.

The third error is that of giving the third instruction to the jury of the court's own motion, as follows:

"Something has been said in the instructions about insane delusions.   It is not every delusion that can be considered an insane delusion.   The delusion must be of such a character that if things were as the delusion imagined them to be, they would justify the act springing from the delusion.   To illustrate: If a person be under the insane delusion that he is the Almighty himself, or is directly commissioned or commanded by the Almighty himself to shoot a particular person that the Almighty has decided must be shot, and is moved by such delusion alone to do the shooting, that would be an insane delusion, because if true it would justify the shooting.   But if a person be under the delusion that some man has done him a mean trick and that he ought to be shot for it, and the delusion moves the person to shoot the man, that is no excuse on the ground of insane delusion, because if the fact had really been that the man had done the person a mean trick just imagined, it would not justify the shooting.   An insane delusion is like a waking dream.   The subject can be neither reasoned into nor out of it.   It may throw some light on the application of the subject to this case to consider whether a conviction in this case would have a tendency to prevent a repetition of such acts."

It is argued for the prisoner that his is not a case of insanity where the delusion played any part; and that the

instruction that the criminality of the act depended upon where the delusion originated and tended to—if from the Almighty it would not be criminal, but if from the evil one it would be a crime, is erroneous reasoning, and that the instruction must not only state the propositions of law correctly, but they must apply to the case on trial. (*Marion v. State*, 20 Neb., 233.)

It is to be observed from the record that the ninth instruction requested by the prisoner's counsel at the trial, and given by the court to the jury, was: "That the law recognizes partial as well as general insanity; that a person may be insane upon one or more subjects, and sane as to others; that he may be laboring under a mental delusion upon some particular matter, or regarding a particular person, and generally sane upon all other subjects; and that the law made no difference as regards the guilt of the party charged, whether the act charged was produced by general insanity, or by mental delusion, regarding some particular subject or person."

It is believed that the court stated a recognized rule of law, that the delusion must be of such a character, that if the conditions and things were such as imagined by the deluded party or person to be, they would justify the act springing therefrom. The third instruction was given in explanation and supplementary to the ninth instruction above stated, as requested by the prisoner, and is not without authority.

The English judges answered to a parliamentary committee on the special topic of insane delusion, "that if the person labors under a partial delusion only, and is not in other respects insane, we think he must be considered in the same situation as to responsibility, as if the facts with respect to which the delusion exists were real. If under the influence of his delusion he supposes another man to be in the act of attempting to take away his life, and he kills that man, as he supposed in self-defense, he would be ex-

empt from punishment; but if his delusion was that the deceased had done a serious injury to his character and fortune, and he killed him in revenge for such supposed injury, he would be liable to punishment." (Wharton's Crim. Law, 1, 37.)

In the case of *Com. v. Rogers*, 7 Met. [Mass.], 500, C. J. Shaw held that "monomania may operate as an excuse for a criminal act, when the delusion is such that the person under its influence has a real and firm belief of some fact not true in itself, but which, if true, would excuse his act; as where the belief is that the party killed had an immediate design upon his life, and under that belief the insane man kills in supposed self-defense. A common instance is where he fully believes that the act he is doing is done by the immediate command of God, and he acts under the delusive, but sincere, belief that what he is doing is by the command of a superior power, which supersedes all human laws and the laws of nature." (See *Hadfield's Case*, Stephen's Hist. Crim. Law, 160.)

This is the same instruction given in the present instance.

The closing words of the third instruction of the court are those which counsel complain most bitterly of: that "It may throw some light on the application of the subject to this case to consider whether a conviction would have a tendency to prevent a repetition of such acts." And counsel proceeds to argue that "the court believed there was evidence of insanity, as shown by the instructions given; then it mattered not, if the defendant was insane, whether he would or would not commit the offense instanter upon the first opportunity; there could be no conviction." This reasoning is wrong. It is not to be inferred, from the instructions of the court, that the prisoner was insane, or was deluded into the crime, with which he was charged, by a diseased imagination; that fact was for the jury to find from the evidence; and however weak that

Thurman v. State.

evidence as to insanity and delusion might be, would his conviction, under the circumstances, tend to prevent a repetition of such acts? It was an abstract proposition in moral economy to be considered by the jury, in its relation to the prisoner, and in his relation to the public, and we can see no prejudicial error in the proposition. It, at least, is suggestive of doubt as to the propriety of conviction. The third error is overruled.

"Fourth—The court should have instructed the jury that the indictment included two offenses, one an assault, the other shooting with intent to kill, and if the jury did not find that the offense of shooting with intent to kill was sufficiently proven, they could convict for an assault. The failure to do this was error."

The court charged the jury on the trial with twenty-seven instructions, nineteen of which were those requested by the prisoner's counsel, without modification. If the minor offense was an alternative so remote from the evidence in support of the offense charged in the indictment as to be overlooked by the court, it was the privilege of counsel to have called attention to it, and to have requested an instruction to the jury therein. No such instruction was offered. Nor was such error assigned on the motion for a new trial in the court below. From the evidence it would seem to have been an alternative that the court, jury, and counsel alike had neither hope for nor confidence in. It could not be considered in this court under such circumstances, and is therefore overruled. The judgment and sentence of the district court are

AFFIRMED.

THE other judges concur.