Pflueger v. State.

GEORGE PFLUEGER v. STATE OF NEBRASKA.

FILED NOVEMBER 20, 1895.    No. 6783.

1. **Jury:** ORDER TO SUMMON.   It is not error for the trial court in a prosecution for a felony to order the summoning by the sheriff of persons qualified to serve as jurors, in anticipation of a demand for talesmen after the regular panel shall have been exhausted.

2. **Homicide:** INSANITY AS DEFENSE: EVIDENCE.   In a prosecution for murder, the defense relied upon being insanity at the time of the homicide, an order previously made by the proper county board finding the accused to be a fit subject for treatment in the hospital for the insane is, at most, evidence of the defense relied upon, and raises no conclusive presumption that the accused was at the time in question insane in the sense that he is not accountable for the act charged.

3. ———: CONFESSIONS.   Statements in the nature of confessions by the accused *held* voluntary and rightly admitted in evidence.

4. ———: INSANITY: EVIDENCE OF NON-EXPERT WITNESS.   A non-expert witness may in a prosecution for murder, the necessary foundation therefor having been laid, be examined as to his opinion regarding the sanity of the accused, and may state whether in his judgment the latter was able to distinguish between right and wrong with respect to the particular crime charged.

5. ———: ———: ———.   The opinions of non-expert witnesses who have known the accused for fifteen years and who met and observed him almost daily for six weeks or more immediately preceding the commission by him of a homicide, their attention being particularly directed to his mental condition, are admissible as bearing upon the question of his sanity.

6. ———: ———: INSTRUCTIONS.   Instructions defining insanity as defense in prosecutions for murder examined and approved.

ERROR to the district court for Cuming county.   Tried below before NORRIS, J.

The facts are stated in the opinion.

*C. C. McNish* and *A. R. Oleson*, for plaintiff in error:

The court erred in overruling the objections of accused to summoning jurors by special venire. (*Dupont v. Mc-Adow*, 9 Pac. Rep. [Mont.], 925; *Lincoln v. Stowell*, 73 Ill., 246; *Kennon v. Gilmer*, 4 Mont., 450.)

Where insanity is once shown to exist it will, unless from a temporary cause, be presumed to continue until the contrary is made to appear. (*Physo-Medical College v. Wilkinson*, 9 N. E. Rep. [Ind.], 167; *State v. Wilner*, 40 Wis., 304; *Rogers v. Walker*, 6 Pa. St., 371; *Cochran's Will Case*, 1 T. B. Mon. [Ky.], 264.)

Where insanity is relied upon as a defense in a criminal action, and testimony has been offered which rebuts the legal presumption that the accused was sane, the burden is upon the prosecution to establish beyond a reasonable doubt that he possessed sufficient mental capacity to comprehend the nature of the act complained of. (*Wright v. People*, 4 Neb., 407; *Hawe v. State*, 11 Neb., 537; *Hart v. State*, 14 Neb., 572; *Anderson v. State*, 25 Neb., 550; *Ballard v. State*, 19 Neb., 609; *Polk v. State*, 19 Ind., 170; *Stevens v. People*, 31 Ind., 485.)

If the prisoner raises a reasonable doubt as to his sanity, it is necessary that the state should prove mental soundness beyond a reasonable doubt. (*Guetig v. State*, 66 Ind., 94; *State v. Crawford*, 11 Kan., 32.)

Where insanity is shown to exist a short time before the act, the evidence should show sanity at the time or the jury should acquit. (*State v. Johnson*, 40 Conn., 136.)

There was error in the rulings as to the effect to be given the proceedings of the commissioners of insanity. (*Hutchinson v. Sandt*, 4 Rawle [Pa.], 234.)

The court erred in permitting non-expert witnesses to testify as to the mental capacity of the accused. (*Shultz v. State*, 37 Neb., 481.)

If the state failed to prove beyond a reasonable doubt

that the accused had recovered from insanity before the commission of the crime, he should have been acquitted. (*In re Gangwere*, 14 Pa. St., 428; *Imhoff v. Witmer*, 31 Pa. St., 245; *Klohs v. Klohs*, 61 Pa. St., 247.)

*A. S. Churchill, Attorney General,* and *George A. Day Deputy Attorney General,* for the state :

In an argument to sustain the ruling of the lower court as to the manner of selecting the jury reference was made to the following authorities: *Dodge v. People*, 4 Neb., 229; *McElvoy v. State*, 9 Neb., 157; *Clough v. State*, 7 Neb., 324.

The counsel for plaintiff in error argued that the finding of the commissioners of insanity and the order of the district court directing the accused to be confined in the hospital for the insane adjudicated the question of the prisoner's insanity.   This proposition is supported neither by reason nor authority. (*Dewey v. Allgire*, 37 Neb., 6; *Leggate v. Clark*, 111 Mass., 308; *Knox v. Haug*, 48 Minn., 58; *Wheeler v. State*, 34 O. St., 394.)

The confessions were properly admitted in evidence. (*Furst v. State*, 31 Neb., 403; *Heldt v. State*, 20 Neb., 496.

Post, J.   .

This is a petition in error by George Pflueger, who seeks the reversal of a judgment of the district court for Cuming county, whereby he was convicted of murder in the second degree, the crime charged being the killing of his wife, Anna Pflueger.

1. The first of the allegations of error which we shall notice is that which relates to the manner of selecting the jury. It is shown by the transcript that an information was filed by the county attorney on the 27th day of January, 1893, charging the plaintiff in error with the crime of murder in the first degree.   On May 15, following, a

second information was filed, charging the same offense, that first mentioned having been quashed on motion of the accused, and on the same day the sheriff was ordered to summon thirty-six additional jurors. We find no record of the order last mentioned, but the direction to the sheriff was in writing, under the seal of the court, and commanded the summoning of thirty-six good and lawful men from the body of the county to appear before said court on the following day. to serve as petit jurors. From the sheriff's return, made May 16, it appears that the required number of jurors (therein named) had been summoned in accordance with the command of said writ. On the day last named, the accused having entered a plea of not guilty, the selection of a jury was begun, whereupon the following proceedings were had, quoting from the bill of exceptions:

" This exhausts the jurors of the regular panel who are in attendance. As some of the jurors have not reported, defendant asks that the regular panel be exhausted before proceeding further, which request is granted without objection by the plaintiff. Court now takes a recess until 1:30 o'clock P. M. of the same day.

"On the reconvening of court at 1:30 P. M., pursuant to adjournment, it being reported by the sheriff that the remainder of the jurors drawn on the regular panel are unavoidably and excusably absent, the special venire of thirty-six names is resorted to for the purpose of filling the panel. Counsel for the defendant at this time object to the calling of any of the jurors summoned by the special venire in this case, for the reason that the list has not been prepared as required by the Statutes of Nebraska, being section 6093 thereof (sec. 465a, Criminal Code), and for the further reason that said special venire was ordered issued in this case before ever the information upon which the jury is now being impaneled was filed. Objection overruled, to which ruling the defendant excepts."

As each of said special venire-men was passed for cause

by the state, a challenge was interposed by the* accused in substantially the same language, viz.: " Counsel for defendant challenges the juror for cause, and for the further reason that he is a special talesman called by the sheriff upon the venire issued before information was filed." Upon one· of such challenges the following proceedings appear:

"Counsel for defendant challenges the juror Wilde, on the ground that he is one of the jurors called by the special venire not issued according to law. Counsel for plaintiff objects to the challenge, for the reason that on yesterday afternoon, at about 5 o'clock, C. C. McNish, counsel for defendant, stated to the court that there would not be over eight jurors in the regular panel that would be‾ competent to sit as jurors, in his opinion, and that it would require a long time to impanel a jury, and that the court then suggested that it would be well that a special venire should issue for thirty-six talesmen to expedite the impaneling of a jury when' the regular panel was exhausted; that upon consultation with the court and counsel on both sides, the court ordered the special venire, upon which the juror, to whom the objection is now made, was called by the sheriff. Counsel for defendant objects to the record being made in this form, for the reason that neither this defendant nor his counsel have requested the issuance of a special venire in this case.

. "By the Court: Then let the record read that the special venire was ordered by the court with the knowledge of counsel on both sides and without any objection being made by either side,—with the knowledge of and without any objection of counsel.

"Counsel for defendant objects for the further reason that that was upon another information, to which the defendant had filed a motion to quash, and in the neighborhood of four hours before this information, upon which the defendant is now upon trial was filed. Objection overruled, to which ruling defendant excepts."

36

Our chief difficulty is in determining the facts rightly, inferable from the foregoing record. If the so-called special venire was merely to assist the sheriff by securing the attendance of competent talesmen, and if the talesmen required were, in fact, called by him in the impaneling of the jury, the error alleged is not apparent, since the accused has been tried by jurors selected by the person and substantially in the manner prescribed by law. The only authority found in the statutes for a special venire is that contained in section 465a, Criminal Code, above mentioned, and which is confined to cases in which one of two or more persons charged in the same indictment has demanded a separate trial. The court may in such cases order a special venire to be drawn and summoned in the manner therein specified, and no other. Provision is made by section 664, Civil Code, for the calling of juries in certain cases by the sheriff, and for the filling by him of the panel for the term when incomplete, but the selection of talesmen for particular causes, after the regular panel shall have been exhausted, is governed by the rules of the common law. It is by section 282, Civil Code, expressly provided: "The general mode of summoning, impaneling, challenging, and swearing the jury is not changed by this code." The selection of talesmen is by the common law entrusted to the discretion of the sheriff (Thompson, Trials, 27; Murfree, Sheriffs, 394), and the right to rely upon that discretion is a substantial right which, to the accused in a prosecution for a felony, cannot be denied. But we cannot, from the foregoing record, say that there was in this instance any departure from the established practice. All presumptions are in favor of the regularity of the proceedings of the district court, and the record being silent upon the subject, we conclude that there exists no substantial ground of complaint by the accused with respect to the rulings referred to.

2. It is next contended that the district court erred in determining the effect to be given to an order of the com-

missioners of insanity for Cuming county, finding the ac-
cused insane and a fit subject for custody and treatment in
the hospital for the insane.   It is disclosed by the record
that on the 28th day of October, 1891, an affidavit was
lodged with the clerk of the district court, alleging that the
accused was insane and a fit subject for treatment; that the
hearing thereon was continued on his application from time
to time until November 10, on which date the order first
mentioned was made.   It is also shown that while the ac-
cused was being conveyed to the hospital for the insane at
Norfolk, a writ of *habeas corpus* was allowed by Hon.
Isaac Powers, Jr., judge of the ninth judicial district, at
his instance, for, the purpose of inquiring into the cause and
legality of his detention ; that a commission was appointed
by said judge to take testimony and determine therefrom
whether or not he was insane, and that thereafter, on the
26th day of December, upon a finding that he was insane,
the accused was remanded to the custody of the sheriff, but
escaped from the latter without having been actually com-
mitted to the hospital.   It is argued that these findings
should be construed as an adjudication of the question of
the sanity of the accused ; that as such they are conclusive
in this prosecution, and that the court should have directed
a verdict in his favor on the ground that he was insane at
the time of the homicide and, therefore, not accountable for
his act.   In that view we are unable to concur.   The exami-
nation contemplated by chapter 40, Compiled Statutes, en-
titled "Insane," is *ex parte*, and for the purpose simply of
determining whether a particular person is a fit subject for
treatment in the hospital for the insane.   Practically the
same question was presented to this court in *Dewey v. All-
gire*, 37 Neb., 6, where, referring to the statute mentioned,
it is said: "By section 54 of the same chapter the term
'insane,' as used in the act, is defined to include every spe-
cies of insanity or mental derangement.   *   *   *   The
records of similar proceedings have been held inadmissible

in such cases as we are now considering, in *Leggate v. Clark*, 111 Mass., 308, and in *Knox v. Haug*, 48 Minn., 58, and we think the reasoning in those cases is sound. In the case of *Wheeler v. State*, 34 O. St., 394, it was held that while such inquisitions were not even *prima facie* evidence of insanity, they were admissible as tending to prove the fact; but the authorities cited in the opinion in the latter case are all based upon inquisitions *de lunatiço*, and the court seems to have mistaken the distinction between the subjects of inquiry in the two proceedings. We think that these records were improperly admitted in evidence." We have at this time no reason to question the soundness of the conclusion there stated, or to doubt its applicability to the facts of the case at bar. The findings were not only received in evidence, but the jury were instructed that they established *prima facie* the insanity of the accused and imposed upon the state the burden of proving that he was sane at the time of the homicide. The ruling complained of, if erroneous, did not prejudice the rights of the accused and presents no ground of complaint by him.

3. It is claimed that the court erred in receiving evidence of certain confessions of the accused on the ground that they were not shown to have been voluntarily made by him; but that contention is without support in the record. The statements proved were evidently voluntary in the strictest sense of the term, and within the rule frequently asserted by this court. (See *Heldt v. State*, 20 Neb., 496, and *Furst v. State*, 31 Neb., 403.)

4. Among other witnesses called by the state in rebuttal to establish the sanity of the accused was the latter's brother, Henry Pflueger, who, from his relation to the former, was, it is conceded, competent to testify as a non-expert witness. He was, however, over the objection of the accused, examined by counsel for the state, as follows:

Q. Now, in your opinion, did he [the accused] at that time [the day of the homicide] have sufficient mind to tell the difference between right and wrong?

Pflueger v. State.

A. Oh, yes. He knew the difference between right and wrong.

Q. Did he have sufficient mind to know the difference between right and wrong as to the crime of murder?

A. Yes.

Q. Now, in your opinion, did he on that day have mental capacity enough to know the difference between right and wrong as to the crime of murder?

A. Yes; I think he knew that day between right and wrong.

Q. Did you think that on the 20th day of February, 1892 [the day preceding the homicide], he had sufficient mind to know the difference between right and wrong as to the crime of murder?

A. Yes.

The objections, it should be stated, go to the form of the questions only, no exception being taken to the answers on the ground that they are not responsive. This case, on the record quoted, differs from *Shults v. State*, 37 Neb., 481, relied upon by counsel for the accused. In that case non-expert witnesses were by the district court permitted to testify that the prisoner did in fact know the difference between right and wrong at the time of the homicide charged, and on review upon petition in error to this court it was held that for obvious reasons the testimony should have been confined to the opinions of the witnesses, leaving the jurors to draw their own inferences therefrom. The killing being conceded, the vital question is, whether the accused is accountable for his act, and which depends for its solution upon whether he was, or was not, at the time he took the life of the deceased, able to distinguish between right and wrong with respect to the particular act involved. Tested by that rule it would seem that the evidence complained of was rightly admitted. (*State v. Lewis*, 20 Nev., 333; *Carr v. State*, 24 Tex. App., 562; *United States v. Guiteau*, 1 Mack. [D. C.], 498; Rodgers, Expert Testi-

mony, secs. 69, 71.) *Shults v. State*, so far as it asserts a different view, is modified to conform to the rule asserted by the authorities above cited.

5. It. is alleged that the court erred in permitting Crawford and Briggs, witnesses for the state, to testify regarding the sanity of the accused, but we think otherwise. Said witnesses had known the accused for more than fifteen years, and each had seen and observed him almost daily from the commencement of the proceedings before the commissioners of insanity, on the 28th day of October until December 17, following, their attention having been particularly directed to the question of his mental condition. The foundation was otherwise sufficient and the witnesses qualified to testify under the rule in *Shults v. State, supra.*

Exception is taken to the refusing of certain instructions requested by the accused, but there is no error in the ruling assigned, since the propositions therein stated had been given in the charge of the court.

6. Finally, it is said that the court erred in giving the third instruction requested by the state. It is sufficient, without entering into a discussion of the paragraph assailed, that it was examined and approved by this court in *Thurman v. State*, 32 Neb., 226. We find no error in the record and the judgment is

AFFIRMED.