STATE OF IOWA v. ED GRENDAHL, Appellant.

**Larceny:** INSANITY AS A DEFENSE: EVIDENCE. The evidence of insanity in a prosecution for larceny is reviewed and held not so conclusive as to take that question from the jury.

**Same.** A finding of insanity on an inquiry collateral to a prosecution is not conclusive on the question of defendant's mental condition at the time of the offense, or subsequent to such finding, and upon a later prosecution for the offense the testimony of the prison physician that he was not insane when admitted to that department was competent.

*Appeal from Wapello District Court.—* HON. F. W. EICHELBERGER, Judge.

TUESDAY, OCTOBER 16, 1906.

THE defendant appeals from a conviction for larceny committed by the stealing of a horse of the value of $125.— *Affirmed.*

*Jaques & Jaques,* for appellant.

*Chas. W. Mullan, Attorney General,* and *Lawrence De-Graff, Assistant Attorney General,* for the State.

McCLAIN, C. J.— The facts shown by the evidence for the prosecution, and without contradiction on behalf of defendant, make out a plain case of guilt, and, so far as the sufficiency of the evidence is concerned, amply support the verdict, unless the evidence tending to show insanity of the defendant is so conclusive as to require reversal.    The testimony of relatives of defendant, as to his mental condition for some years prior to the alleged commission of the crime, tends strongly to indicate that defendant was not morally responsible for his conduct, and this conclusion would also find some support in the facts attending the taking and sale by defendant of the animal with the stealing of which he was charged; for it would seem that a person of any reasonable amount of intelligence must have known that it would be impossible to appropriate the animal of another under such circumstances without detection.    Moreover medical witnesses, in answer to a long hypothetical question, expressed it as their belief that the conduct of defendant testified to by his relatives indicated insanity.    On the other hand, persons who had been acquainted with defendant for years testified that they had seen no acts or conduct on the part of defendant such as to lead them to think that he was insane, and the prison physician at the State penitentiary at Anamosa, in charge of the insane department to which defendant had been committed pending trial, on the ground that he appeared to be insane, so that further proceedings in the prosecution against him should be suspended (see Code, sections 5540–5543), testified that, when defendant was committed to the insane department, he was found to be in fact not insane but a degenerate of a low type of intelligence, and physically weak from lack of nourishment caused by a tumor in the jaw; removal of which was followed by improved condition, resulting in his discharge from the insane department within a few weeks after his commitment.    We think without question that there was· such conflict in the evidence as to de-

1. LARCENY: insanity as a defense: evidence.

fendant's mental condition as to leave that matter a proper subject for the determination of the jury, and we cannot interfere, therefore, with the verdict on that ground.

But counsel for appellant contend that there was error in allowing the prison physician to testify with reference to defendant's mental condition while under his charge, for the reason that the finding in the proceeding under Code, sections 5540–5543, was conclusive as to his condition at that time. However conclusive the finding in this proceeding may have been on the question of whether defendant was then in such mental condition that he should not be subject to trial, it was certainly not conclusive as to his mental condition when the crime was committed. This finding was introduced in evidence on behalf of the defendant as tending to show his mental condition at the time of the commission of the crime, and no doubt it was admissible for that purpose, but not conclusive, for it related to a time subsequent to the commission of the crime. *Pflueger v. State,* 46 Neb. 493 (64 N. W. 1094); *People v. Farrell,* 31 Cal. 576; *State v. Arnold,* 12 Iowa, 479. The finding was not even *prima facie* evidence that the defendant was insane when the crime was committed, but might be considered by the jury just as any other evidence of subsequent insane condition would be admissible on the question of insanity at a previous time. The finding by the jury in the collateral inquiry relating to defendant's mental condition was made, as appears by the record, on the 13th day of April, and the defendant was admitted to the insane department of the penitentiary in consequence of this finding on the 20th or 21st of the same month. The testimony of the prison physician did not, therefore, relate to the mental condition of defendant at the time he was found by the jury in the collateral inquiry to have been insane, and that finding was certainly not conclusive as to his condition on a subsequent date. In September following defendant was discharged from the insane department, and

2. SAME.

returned to Wapello county for trial. It is not contended that the finding in the collateral inquiry would preclude evidence that subsequently defendant was of sound mind, and the testimony of the prison physician that defendant was not insane after he had been received into the insane department and subjected to examination was therefore entirely competent.

We find no error in the action of the trial court, and its judgment is *affirmed*.