OTTO SNIDER v. STATE OF NEBRASKA.

FILED OCTOBER 5, 1898.   No. 10177.

56  309
d58  227
58  228
56  309
61  279

1. **Criminal Law: CONFESSIONS: FOUNDATION FOR EVIDENCE.** In laying the foundation for evidence of confessions in a criminal case it is sufficient to prove affirmatively all that occurred prior to and at the time of the confessions, provided such affirmative proof excludes the hypothesis of inducements of hope or fear.

2. **Witnesses: OPINIONS AS TO SANITY.** Witnesses not experts may give their opinions as to a person's sanity only after narrating the facts by them observed on which they base their opinions.

3. **Insanity: INSTRUCTIONS: BURDEN OF PROOF: TEXT-BOOKS.** An instruction in a criminal case, in effect, that every one is presumed sane, but if there is evidence tending to rebut the presumption and sufficient to raise a reasonable doubt on the issue of insanity, then the burden is on the state to show sanity beyond a reasonable doubt, shifts the burden of proof and is therefore erroneous.

4. ——: Burden of Proof. To cast on the state the burden of prov-
    ing sanity it is only requisite that there be some evidence tending
    to prove insanity. It is not necessary that there must first be
    evidence sufficient to raise a reasonable doubt.

Error to the district court for Butler county. Tried
below before Sedgwick, J. *Reversed.*

*L. S. Hastings* and *Steele Bros.,* for plaintiff in error.

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy
Attorney General,* for the state.

Irvine, C.

Otto Snider was convicted of the statutory offense of
placing an obstruction on a railway track, and brings the
proceedings here for review.

One group of assignments of error relates to the ad-
mission in evidence of certain confessions. The objection
to this evidence was, in effect, that it was not sufficiently
shown that the confessions were voluntary. *Ballard v.
State,* 19 Neb. 609, is relied on in support of the objection.
It was there held that an officer may testify to state-
ments made to him by the defendant while in custody if
it is shown that they were made voluntarily and without
inducements of hope or fear having been made or offered
by the officer or any other person. It is said that the evi-
dence was here insufficient to satisfy the condition, be-
cause it was only shown what was said; that menaces
were not excluded nor were inducements by others. It
would be useless to set out the evidence at length. It
was shown that while others were in sight, no other per-
sons than the defendant and those to whom the con-
fessions were made took part in the conversation, or prob-
ably heard it. The witnesses narrated all that occurred,
and this affirmative evidence excluded any hypothesis of
inducements of any character. By showing what the wit-
nesses did say, and all that they said, it was shown as
well as by direct negative evidence that neither promises
nor menaces existed. It is hardly ever possible to abso-

lutely exclude the possibility of the influence of some pre-
vious inducement held out by a stranger and not known
to the witness by whom it is sought to prove the con-
fession.  Here circumstances were proved rendering it
highly improbable that there had been such previous in-
ducements, and there was no evidence that there were or
might have been such.  This was sufficient.

By another group of assignments certain rulings are
challenged whereby the court struck out answers of wit-
nesses relating to defendant's mental condition.  These
witnesses were not experts.  Counsel were endeavoring
to elicit from them facts throwing light on the question
of defendant's sanity.  The answers stricken out were in
the nature of opinions or inferences from observed facts
not previously narrated; for instance, "he appeared not
to understand things."  In each instance the court struck
out such answers, but permitted further questions to be
asked calling out the facts which gave rise to such opin-
ions, and finally, after the facts were so narrated, permit-
ted answers to categorical questions eliciting the opinion
of witnesses, derived from those facts, as to defendant's
sanity.  In so doing the court pursued strictly and cor-
rectly the rule established by several decisions of this
court which have been recently reviewed and the rules
thereby established again enforced in *Lamb v. Lynch*, 56
Neb. 135. .

The following instruction was given: "You are in-
structed that the law presumes every one to be sane and
responsible for his acts until the contrary appears from
the evidence; but if there is evidence in the case tending
to rebut this presumption and sufficient to raise a rea-
sonable doubt on the issue of insanity, then the burden
of proof is upon the state to show by the evidence, beyond
a reasonable doubt, that the defendant was sane, as ex-
plained in these instructions, at the time the alleged of-
fense was committed."  This instruction was erroneous
in that it shifted the burden of proof until such point as
the evidence should be sufficient to raise a reasonable

doubt. The rule is that the burden does not shift in a criminal case. In the absence of any evidence tending to show insanity, the presumption of sanity satisfies the requirements of the law; but as soon as there is any evidence tending to show insanity, then the state must convince the jury of sanity, as of every other element of guilt. It is not necessary that there must first·be evidence sufficient to raise a reasonable doubt. The attorney general calls attention to the fact that the instruction assailed appears in a work on Instructions to Juries as applicable to those states where, as here, the rule is that the burden does not shift. This fact only serves to show with what caution resort must be had to this, perhaps the most dangerous, class of text-books. It does appear in the work referred to and in the connection stated, but the only case cited as sustaining it is *Commonwealth v. McKie*, 1 Gray [Mass.] 61. In that case there was no issue of insanity. It was a prosecution for assault and battery, and the trial judge had instructed that· if the bare fact of the battery had been proved, the burden was upon the defendant to show justification. This was held bad because it shifted the burden, the court adding to its discussion: "There may be cases where a defendant relies on some distinct, substantive ground of defense to a criminal charge, not necessarily connected with the transaction on which the indictment is founded (such as insanity, for instance), in which the burden of proof is shifted upon the defendant. But in cases like the present (and we do not intend to express an opinion beyond the precise case before us)   *   *   *.  the burden of proof does not change." It will be.seen that this is not even an *obiter dictum* in support of such an instruction; it is only an effort by the court to prevent an inference to be drawn either way. Nevertheless, the same court a little later (*Commonwealth v. Eddy*, 7 Gray [Mass.] 583) did hold that while the burden is throughout on the commonwealth, it is satisfied as to sanity by the presumption thereof, and if insanity be a defense the defendant must

prove it by a preponderance of the evidence—a conclusion directly opposed to the uniform rule in this state. The court by such an instruction in effect says that the jury is not to look constantly to see if the state has proved guilt, but, if insanity is a question, it must first look at the case from the standpoint of guilt, and see if there is affirmative evidence of insanity sufficient to acquit, and only then recur to the proper point of view. That it is erroneous is shown by many of our decisions. They are reviewed in *Peyton v. State*, 54 Neb. 188. In that case an instruction contained a similar vice, and while it related to an alibi, it is in point, because, as shown by the cases there cited, this court has always refused its assent to the doctrine that as to the burden of proof there is a distinction between essential elements of the offense and what the Massachusetts court styles a "distinct, substantive ground of defense."

REVERSED AND REMANDED.