DONALD FISHER V. STATE OF NEBRASKA.
299 N. W. 501

FILED JULY 25, 1941. No. 31187.

*Merril R. Reller* and *Jack W. Price,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Don Kelley, contra.*

Heard before ROSE, EBERLY, PAINE, MESSMORE and YEAGER, JJ.

YEAGER, J.

This is a criminal action wherein in the district court for Jefferson county, Nebraska, it was charged in an information in due and proper form that Donald Fisher, defendant and plaintiff in error herein, on the 20th day of July, 1940, had in his possession a certain false, forged and counterfeited bank check for the payment of money, which check, on the same day, he knowingly, falsely and feloniously uttered and published as true and genuine, with the intent to prejudice, damage and defraud.

The defendant was duly tried, and on December 11, 1940, he was found guilty by the verdict of a jury. Following ruling on his motion for new trial, the defendant was, on the 17th day of December, 1940, sentenced to serve an indeterminate sentence in the state penitentiary of not less than three nor more than five years.

The defendant, by petition in error, has brought the case to this court for review. His assignments of error are numerous.

There was, of course, a plea of not guilty, and under the plea the defense presented and urged was that of insanity. From an examination of the bill of exceptions it appears

beyond any real dispute that the defendant committed the acts charged against him.

The defense of insanity was properly raised by the evidence adduced by the defendant; therefore, it follows that the burden devolved upon the state to prove the sanity of the defendant beyond a reasonable doubt as one of the elements necessary to establish guilt. *Wright v. People*, 4 Neb. 407; *Prince v. State*, 92 Neb. 490, 138 N. W. 726; *Torske v. State*, 123 Neb. 161, 242 N. W. 408; *Plessman v. State*, 130 Neb. 758, 266 N. W. 629. The evidence on this proposition was in conflict, and from an examination of the entire record the only conclusion that can be arrived at is that this was a question for determination by the jury. The jury having determined it adversely to the defendant, we can find no basis upon which to say that this determination was wrong. In fact, it appears that the weight of the evidence on this question is strongly favorable to the state.

The evidence discloses that the defendant had, in February, 1939, been committed by the insanity board of Jefferson county, Nebraska, to Ingleside, a hospital for mental incompetents, and that at the time of the commission of the alleged crime defendant was at large, he having escaped from this institution. In this connection the defense urges that it must be presumed that defendant continued to be or remain insane until sanity returned. The evidence did not show a return to sanity; in fact, no such character of proof was offered. The state sought to show only that defendant was capable of distinguishing between right and wrong with reference to the act committed and to show that he was sane. This was the burden of the state. Under the law of this state, no form of insanity is recognized as a defense to a criminal action, unless it affects the mind of the accused to such an extent that it renders him incapable of distinguishing between right and wrong with reference to the act committed. *Torske v. State, supra; Plessman v. State, supra.*

The evidence of the commitment of defendant to a hospital for the insane does not raise the presumption contended for.

As pointed out in *Pflueger v. State,* 46 Neb. 493, 64 N. W. 1094, it is, at most, evidence of the defense relied upon, and raised no presumption that the accused was at the time in question insane in the sense that he was not accountable for the act charged.

On the issues presented it is a fair observation to say that the case was one proper for submission on the evidence adduced, and no just complaint may be found with the instructions of the court. If this were all requiring consideration, there could hardly be any question that the case would be for affirmance.

Another and vital question, however, is raised as to whether or not the defendant was accorded a fair trial. The defendant insists that there was irregularity in the proceedings in that the chief counsel for the defendant was required to take the witness-stand in the presence of the jury and, over objection, produce the instrument forming the basis of the charge against the defendant.

The substantial facts in this connection were that after the uttering of the check in question the agent of the Lincoln Telephone & Telegraph Company, the recipient of the check, turned the check over to the chief of police of Fairbury, Nebraska, who, on July 25, 1940, arrested the defendant, and while the check was out of the possession of the Lincoln Telephone & Telegraph Company the county attorney drafted a complaint against the defendant charging him with the crime in question here. Thereafter the check was returned to the Lincoln Telephone & Telegraph Company. Then on November 30, 1940, Merril R. Reller, attorney for defendant, went to the office of the Lincoln Telephone & Telegraph Company and paid the face amount of the check, whereupon the check was delivered over to him upon the execution of a receipt wherein Reller agreed to deliver the check to any person designated by the agent of the Lincoln Telephone & Telegraph Company. No such designation was ever made by the agent of the Lincoln Telephone & Telegraph Company. Reller testified, and the testimony on this point is undisputed, that he delivered the

check to the defendant who, in turn, delivered it back to him. The case was called for trial on December 9, 1940. On said date the county attorney filed an application for an order requiring Merril R. Reller to show cause why he should not be required to deliver the check herein in question to the county attorney, and that for failure so to do that Reller be found to be in contempt of court.

Before the jury were impaneled, Reller made an oral showing and showed to the court, among other things, that the instrument was canceled; that it came into his possession in his capacity as attorney for the defendant; that the check came to him from Tom Longdon, manager of the Lincoln Telephone & Telegraph Company, upon the payment of the sum represented, without duress and of the free will of the said Tom Longdon, with instructions that upon his direction the instrument would be turned over to such parties as Longdon might direct, but that no such direction or instruction was ever given. Pursuant to the showing of Reller no ruling was made, but the trial court indicated that Reller might be put on the witness-stand and that then the instrument might be demanded of him, and stated, "* * * and I will say to Mr. Reller that no protestation of privilege will be effective and that he will either deliver it or be adjudged in contempt of this court. That's the way the matter will be handled and we will proceed with that knowledge on the part of everybody." Reller did not deliver the check.

The jury were duly impaneled and Reller was called as the first witness. He first gave testimony as to his identity and his relation to the defendant, and was then asked concerning possession of the check and, after claiming his privilege as attorney for the defendant, agreed to answer and to deliver the check if ordered so to do by the court. He was ordered finally to deliver the check to the court reporter. The questions, objections, answers and remarks of the court, with reference to this matter, cover approximately nine pages of the bill of exceptions, all taken in the presence of the jury. That the tension was acute and the atmosphere of the

courtroom was charged by this examination and interchange cannot be seriously questioned upon a reading of that part of the record.

This situation presents two questions: 1. Did the court err in requiring that the check be delivered up? 2. Assuming the propriety and legality of an order to deliver up the check, were the proceedings in relation thereto erroneous to a degree that they prejudiced the right of the defendant to a new trial?

By the greater weight of authority it is held that it is error to require the defendant, or his attorney, to produce incriminating documents which are the basis of a criminal prosecution, and by the same token that it is prejudicially erroneous to conduct proceedings to compel their production in the presence of the jury.

In *People v. Minkowitz*, 220 N. Y. 399, 115 N. E. 987, the court said: "A demand should not be made in the presence of a jury for a defendant to produce an incriminating document which appears to be in his possession, and there is no distinction between making a demand upon the defendant and making a demand upon the defendant's lawyer in his presence and in the presence of the jury. When a lawyer has received a defendant's papers from the defendant after retainer as his attorney he cannot be called upon to produce them in court."

In the opinion in *Boyd v. United States*, 116 U. S. 616, 635, 6 S. Ct. 524, on this subject it is stated: "It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and

against any stealthy encroachments thereon. Their motto should be *obsta principiis.*"

In *Powell v. Commonwealth,* 167 Va. 558, 189 S. E. 433, a forgery case presenting a situation similar to the one with which we are dealing here, the prosecuting attorney, having had subpœna *duces tecum* issue as in this case, asked the attorney for defendant in the presence of the jury to produce a note for $1,000. In its comments, holding this to be error, the court there said: "The Commonwealth contends that this error, conceding it to be error for argument's sake, is harmless. It is error and is presumed to be harmful. Plainly we cannot undertake to say that it is not."

In *McKnight v. United States,* 115 Fed. 972, the court said: "Nor is it essential to the ends of justice that the accused may be thus called upon to produce evidence of a documentary character. The authorities seem very clear that in such cases, where a criminating document directly bearing upon the issue to be proved is in the possession of the accused, the prosecution may be permitted to show the contents thereof, without notice to the defendant to produce it. As it would be beyond the power of the court to require the accused to criminate himself by the production of the paper as evidence against himself, secondary evidence is admissible to show its contents. As the introduction of secondary evidence of a writing in such instances is founded upon proof showing the original to be in the possession of the defendant, it will ordinarily be in his power to produce it, if he regards it for his interest to do so. The court, as we have seen, cannot compel a defendant in a criminal case to produce an incriminating writing. The notice would therefore be futile as a means of compelling the production of the document, and refusal to comply therewith might work injustice to the defendant in the inferences drawn from its nonproduction."

In *Gillespie v. State,* 5 Okla. Cr. 546, 115 Pac. 620, the court said: "If a county attorney can, in the presence of the jury, demand of the defendant, or his counsel, the production of any letters or papers which may be proved to be in

the possession of the defendant, of what value is this constitutional provision? It is true that making a demand upon a defendant to produce such letters or papers is a different thing from forcing him to produce them; but the effect is the same, because if a defendant refuses to comply with such a demand. it is equivalent to admitting that the evidence demanded would incriminate him, if it were produced. The observation and experience of all practicing attorneys will sustain the statement that such an inference is more damaging to a defendant than a proved fact would be. When such a demand is made, a defendant must accept the alternative of either producing the letters, and thereby incriminate himself, or of having the jury place the strongest possible construction against him upon his failure to do so. If this can be done, the very life, body and soul of the Constitution would be violated and trampled upon."

With particular reference to *McKnight v. United States, supra,* Professor Wigmore, in his work on Evidence, vol. 4 (2d ed.) sec. 2268, has criticized the rule; however, the rule appears to us to have a firmer foundation than the criticism. There can be no doubt concerning the likelihood of embarrassment of the prosecution or even of obstruction of justice resulting from the enforcement of the rule, and yet a departure would make it possible to create a situation wherein the presumption of innocence, which is a constitutional cloak thrown about all persons charged with criminal offenses, would no longer have any significance. A demand in open court before a jury by a prosecutor for the production of an existent or nonexistent document, whether based on honest belief in its existence and location or on artifice, the purpose of which would be to place the accused in a disadvantageous position, would be damning indeed. It would have the ineradicable force of evidence if the instrument were not produced without any of the legal sanctity surrounding the proper introduction of evidence. If produced it would be under a definite requirement that the accused give evidence against himself.

An insistence in this case that the instrument was in ex-

istence, that it was in the hands of the attorney for the defendant, and that it came into his hands surreptitiously, is without merit when weighed against the reasons for the rule, which reasons have already been set out, and the further rule of proof when the instrument is in the hands of the defendant or his attorney.

As has also already been indicated, the rule is that, when the instrument is in the hands of the defendant or his attorney, it may be proved by secondary evidence. This, of course, would present some difficulty in case of questioned authenticity of handwriting, but after examination of the evidence we find that no such difficulty was presented in this case. The county attorney had previously copied the check, and the defendant did not deny its execution, but denied only a memory of executing or uttering it.

We are not called upon to pass upon the ethics of obtaining the check by the attorney for the defendant, which seems to have been the question disturbing the mind of the trial judge at the time of the trial. It is not an issue. Whether or not the conduct of this attorney furnished justification for disciplinary action we do not decide, but, however that be, the rights of an accused may not suffer abridgment by threatened punishment of his attorney for his efforts to preserve the constitutional rights and immunities of his client.

As an observation on the question of the ethics of the attorney, in order to protect against false or unfair inferences, the record shows that this attorney obtained the check from the agent of the Lincoln Telephone & Telegraph Company under a stipulation that he would turn it over to whom requested by this agent. This agent never made any such request, and there is no indication or suggestion that the attorney would have failed or refused to comply with any such request if it had been made.

For the reasons set out herein, the judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED.