CLIFTON THOMPSON, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

68 N. W. 2d 267

Filed February 4, 1955. No. 33621.

*Joseph M. Lovely, Adolph Q. Wolf,* and *Thomas J. Walsh,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Homer G. Hamilton,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is a criminal action brought in the district court for Douglas County wherein the defendant Clifton Thompson was charged in an information under section 28-410, R. R. S. 1943, that on or about September 22, 1953, he maliciously shot Alberta Thompson with the intent to kill, wound, and maim. The defendant was duly tried and found guilty by a verdict of a jury. Following the overruling of his motion for new trial, the defendant was sentenced to serve a term of 10 years in the State Penitentiary. The defendant, as plaintiff in error, brings the case to this court for review, and will hereinafter be referred to as the defendant.

There was a plea of not guilty to the offense as charged, and under the plea the defense presented and argued was that of insanity.

There is no doubt that the defendant did, on September 22, 1953, shoot his wife, Alberta Thompson, with the intent to kill, wound, or maim her. The evidence produced by the State to substantiate the charge was sufficient and uncontradicted. No assignment of error is made in this court that the evidence was insufficient to support the charge set forth in the information.

The defendant assigns as error the following: (1) That the trial court erred in holding in effect that there had been no evidence adduced by defendant or the State which tended to show or establish that defendant was legally insane when he shot his wife, Alberta Thompson, on September 22, 1953. (2) That the trial court committed prejudicial error in failing to submit to the jury on its own motion and by proper instructions the question of whether the State had established the sanity of the defendant beyond a reasonable doubt. (3) That the sentence of 10 years imprisonment imposed on the defendant by the trial court was excessive.

The record discloses that the defendant and his wife, Alberta Thompson, have been married for 13 years. During the last year or two of their married life, the

defendant was employed as a chair car porter on a railroad. They resided at 2302 North Twenty-ninth Street in Omaha, Nebraska, since 1945. In May 1953, they separated. There was no quarrel between them at that time, the defendant just left the house. The reason given by the defendant's wife for the separation was that she was tired of the defendant's drinking and gambling. She further testified that during their married life they had quarreled on at least six occasions when there was some violence between them, and that when the defendant was under the influence of intoxicating liquor he would want to fight. There is evidence by witnesses other than the defendant's wife that the defendant drank intoxicating liquors stronger than beer on occasions.

On September 22, 1953, the defendant's wife returned home from work about 4:30 p. m. Just after that time she had a conversation with the defendant to the effect that he had left some overcoats at the house and desired to come and get them. His wife had no objection. About 6:45 p. m., the defendant arrived at the house and was met by his wife who answered the door. The defendant asked how she felt and she said "Fine," and gave him the overcoats. The defendant started off the porch. His wife hooked the screen door and went back into the house. The defendant returned and asked her for a drink of water. She went to the kitchen to get it, and upon her return the defendant had forced the screen door and was standing inside the house. The defendant then asked his wife if she was going to take him back, to which she replied "No." The defendant pulled a gun from under his coat and fired a shot, hitting his wife in the shoulder. She turned and ran out of the back door around to the front of the house and then diagonally across the street. She heard shots fired. The second and third shots did not hit her. The fourth shot hit her in the middle of the left back and knocked her to her knees as she was crossing the street.

The fifth shot fired caused a deep laceration of the left forefinger. The defendant, at that time, was 6 to 8 feet behind her. She did not remain on her knees very long because the defendant was quite close to her. She came to rest in a neighbor's yard. The defendant caught up with her and started beating her on the side of the head with the gun. Then there was a noise, and the defendant ran away. The defendant's wife was taken to the hospital.

The defendant's wife further testified that she had on occasions seen her husband consume intoxicating liquor and become under the influence of liquor during their married life; and that on September 22, 1953, when he came to the house that evening he walked steady, his speech was clear, he did not smell of liquor, and in her opinion he was not under the influence of liquor. In March 1951, she filed a complaint against the defendant for the excessive use of alcoholic liquor, and he was confined in the Douglas County Hospital for about 3 weeks as an alcoholic.

A witness who lived directly north of where the defendant's wife lived, testified that he had known the defendant and his wife since April or May 1945. During the last week in August 1953, the defendant spent two nights with this witness. He came to the house and asked if he could leave his grip for awhile. He showed this witness a .38 caliber revolver and said he was going to kill his wife, that "he was going to settle with the woman next door." There is some evidence by this witness that the defendant had been drinking, but apparently not to the extent that he was helpless in any respect.

The defendant testified that he was 43 years of age; that he had once been convicted of a felony; that on September 22, 1953, he consumed about five bottles of Stite beer which has a greater alcoholic content than other beer; and that he consumed this beer in a 3-hour period. The record is not exactly clear which 3 hours

of the day, but apparently the defendant had finished the last of this Stite beer about 7 o'clock in the evening.

Dr. Chester H. Farrell testified that he specialized in neuropsychiatry, and had served as attending neuropsychiatrist at the Douglas County Hospital since 1946. In March 1951, the defendant had been a patient in the neuropsychiatry ward at the hospital for approximately a month. In the course of his duties, he had examined the defendant. At the time the defendant was brought to the hospital on the complaint of his wife, he was mentally ill. There was some question as to whether his attitude was due to drink or due to mental disturbances. There was so much question that a second examination was held, and a second report made by Dr. Young in which he expressed the opinion that the defendant's mental condition appeared to be the result of alcoholism, and a final diagnosis of mental illness as a result of alcoholism was made. The defendant was released from the hospital on parole. This witness did not see the defendant again until just the day before trial on March 14, 1954. He talked to the defendant in the county jail for about 45 minutes. As a result of this meeting the doctor believed the defendant had a type of personality that expressed itself in an unusual amount of suspiciousness. The technical term applied is that of a "paranoid personality." The defendant suspected that there was an organization of some of his race that was against him. He could not explain why, but he felt that there had been a definite organization, and believed that his wife had made an attempt to get other people of his race to turn against him. The doctor felt that this was probably delusional, and testified that it would not be unusual for alcoholic beverages to aggravate this type of personality and to reinforce or to make this type of suspiciousness more severe. This witness further testified that in his opinion a paranoid ideation or paranoid thinking contituted a permanent part of the defendant's personality and attitude, and as an

emotional tension or strain became more severe, a person with a paranoid personality would have a tendency to do one of two things: (1) They might run off because they felt that they were overwhelmed and could not fight back, or (2) they might strike out blindly and be aggressive. In any event, this evidence in no way reflects on the mental condition of the defendant on September 22, 1953, nor does it purport to prove or disprove whether the defendant knew right from wrong on that date.

There were hypothetical questions propounded to the doctor. In one of these questions it was stated that the defendant's age was 44 years, that he had been married for a period of 13 years, was a railroad employee, had been separated from his wife since May 1953, and attempted a reconciliation; that he went to the home of his wife on September 22, 1953, about 8 o'clock; that he had been drinking about five bottles of Stite beer during the period from 4 to 7 o'clock; that he requested a reconciliation with his wife and had been refused; and that he then produced a gun, fired it at his wife and wounded her three times, and ran after her and struck her with the gun. The doctor was then asked to give his opinion if, at that time, the defendant was capable of distinguishing between right and wrong, to which there was proper objection made.

It was contended by the defendant that the facts relative to his being in the county hospital, as heretofore stated, by necessity must be considered as shown by the evidence.

The other hypothetical questions were not quite as extensive as that set out above.

The facts recited in the hypothetical question were not such as would afford a proper basis for an opinion that the defendant was insane at the time of the commission of the crime. Every event detailed therein was consistent with a finding of sanity. See Lyons v. State, 156 Neb. 550, 57 N. W. 2d 82.

This expert witness was unable to give an affirmative answer as to what manner the consumption of five bottles of Stite beer by the defendant had on his mentality because tolerance in the use of alcoholic beverages differs in individuals. This witness did testify on cross-examination that he did not know the state of the defendant's mind on September 22, 1953, the day of the commission of the offense as herein stated.

The following authorities are pertinent to a determination of this appeal.

All men are presumed to be sane, but if, in the trial of a criminal case, any evidence tending to show or establish defendant's insanity is adduced by either the defense or the State, then the burden is upon the State to convince the jury of the sanity of the defendant beyond a reasonable doubt as one of the elements necessary to establish guilt. To cast upon the State the burden of proving sanity of the defendant, it is only requisite that there be some evidence tending to prove insanity. See, Snider v. State, 56 Neb. 309, 76 N. W. 574; Davis v. State, 90 Neb. 361, 133 N. W. 406; Fisher v. State, 140 Neb. 216, 299 N. W. 501.

The test of insanity, urged as a defense to a charge of crime, is the capacity of the accused to understand the nature of the act committed and his ability to distinguish between right and wrong with respect to it. Where a person is so diseased in mind, at the time the act is charged to have been committed, that he incapable of comprehending the nature of the act and is unable to distinguish between right and wrong with respect to it, he is not accountable, howsoever such insanity may be manifested, whether by insane delusion or in any other manner. See Kraus v. State, 108 Neb. 331, 187 N. W. 895.

In Fisher v. State, 154 Neb. 166, 47 N. W. 2d 349, this court held that the law recognizes no form of insanity or uncontrolled impulse, even though the mental faculties are disordered or deranged, which provides im-

munity from punishment for a criminal act, if the person committing the act has the capacity to know what he is doing and to understand that his act is wrong.

One who has the capacity to distinguish between right and wrong with respect to a criminal act at the time of committing it is legally sane. See, Shannon v. State, 111 Neb. 457, 196 N. W. 635; Williams v. State, 115 Neb. 277, 212 N. W. 606.

Evidence of the commitment of a defendant to a hospital for the insane raises no presumption that the accused was at the time in question insane in the sense that he was not accountable for the act charged. Fisher v. State, 140 Neb. 216, 299 N. W. 501. See, also, Linder v. State, 156 Neb. 504, 56 N. W. 2d 734.

The defendant has intimated that the issue of intoxication should have been submitted and considered by the jury under proper instructions.

The rule as stated in Tvrz v. State, 154 Neb. 641, 48 N. W. 2d 761, is as follows: "'Intoxication is no justification or excuse for crime; but evidence of excessive intoxication by which the party is wholly deprived of reason, if the intoxication was not indulged in to commit crime, may be submitted to the jury for it to consider whether in fact a crime had been committed, or to determine the degree where the offense consists of several degrees.'"

There is no evidence that the defendant was intoxicated at the time the crime was committed. His testimony is that he had consumed about five bottles of Stite beer. He made no claim in his testimony that he was intoxicated at the time the crime was committed. We believe the undisputed testimony in the record clearly indicates that the defendant has no valid defense on the ground of intoxication or excessive use of intoxicating liquors within the contemplation of the rule as stated above.

We conclude, in the absence of any evidence that the defendant was legally insane at the time of the com-

mission of the offense it is presumed that he was sane. Under the facts in the instant case, the trial judge did not commit prejudicial error in refusing to submit the issue of whether or not the defendant was insane to the jury.

This brings us to the question as to whether or not the sentence was excessive.

The long-followed rule is that where the punishment of an offense created by statute is left to the discretion of a court, to be exercised within certain prescribed limits, a sentence imposed within such limits will not be disturbed unless there appears to be an abuse of such discretion. See, Young v. State, 155 Neb. 261, 51 N. W. 2d 326; Taylor v. State, *ante* p. 210, 66 N. W. 2d 514.

We find no abuse of discretion here.

For the reasons given in this opinion the judgment of the trial court is affirmed.

AFFIRMED.