**Harlan Lynn NOBLE, Appellant,**

v.

**Maurice SIGLER, Warden, Nebraska State Penitentiary, Appellee.**

**No. 17902.**

United States Court of Appeals Eighth Circuit.

Nov. 8, 1965.

Allen L. Overcash, of Woods, Aitken & Aitken, Lincoln, Neb., filed typewritten brief for appellant.

Richard H. Williams, Asst. Atty. Gen., Lincoln, Neb., filed typewritten brief for appellee.

Before MATTHES, RIDGE and GIBSON, Circuit Judges.

GIBSON, Circuit Judge.

Petitioner, Harlan Lynn Noble, collaterally seeks relief from a life sentence assessed by the District Court of Lancaster County, Nebraska, upon his plea of guilty to kidnapping, sodomy, and being an habitual criminal. Prior to the present conviction petitioner had been convicted of kidnapping, rape, sodomy and being an habitual criminal by a Kansas District Court in 1952 and was then sentenced to life imprisonment. The court files disclose, "He has a long standing criminal record for various charges and is an habitual on forcible rape". In 1956 while serving said life term petitioner was adjudged incompetent by the Probate Court of Leavenworth, Kansas, and was transferred to the Larned State Hospital, at Larned, Kansas.

While under confinement in the mental hospital, petitioner escaped about June 2, 1959 and was arrested shortly thereafter on charges of kidnapping, and sodomy of a six-year old girl, and being an habitual criminal. The arrest was made in Wisconsin in September 1959, and petitioner was returned to Nebraska for trial. The crimes charged against petitioner were committed about August 1, 1959. After advising with court-appointed counsel, the petitioner pled guilty to the charges on which he is now confined.

Neither petitioner, his counsel or the state raised any issue with respect to petitioner's mental competency at the time of his trial in the Nebraska District Court, although his past adjudication of incompetency was known to the state and to the Court.

Since his confinement petitioner has initiated two habeas corpus proceedings in the Nebraska Court, one of which was appealed to the Nebraska Supreme Court. These applications were allowed in forma pauperis but no counsel was appointed for petitioner either in the District Court applications or on the appeal, the appeal being dismissed for failure to file a printed brief pursuant to court rules.

Petitioner complains of being denied the equal protection of the laws and due process on the basis:

1. That he "was insane at the time of his trial and did not have the mental capacity or competence to understand the proceedings against him or to properly prepare a rational defense thereto or to properly appraise his own guilt or innocence or assist or advise his counsel";

2. The dismissal of his appeal to the Nebraska Supreme Court for failure to file printed briefs; and

3. The failure of the Nebraska courts in the collateral proceedings to appoint counsel.

The United States District Court for the District of Nebraska accepted jurisdiction finding that petitioner had either exhausted his state remedies or that the state remedies were inadequate, held a

hearing and found that petitioner was mentally competent to stand trial in the original Nebraska proceedings.

In this appeal, petitioner points out that he was committed to a Kansas state mental institution and was still under court declaration of insanity when he escaped and committed the crime for which he was incarcerated in Nebraska. The Nebraska Court was aware of this declaration of insanity, yet proceeded to convict and sentence him. Petitioner argues that he has the benefit of a presumption of continuing insanity and that for the state court to continue without a sanity determination in the face of this presumption renders the subsequent proceedings void.

■ There is no doubt but that the common law rule declaring that an "insane" person cannot be validly tried or convicted of a crime is enforceable against the state by way of the "due process clause" of the Fourteenth Amendment. Massey v. Moore, 348 U. S. 105, 75 S.Ct. 145, 99 L.Ed. 135 (1954); Thomas v. Cunningham, 313 F.2d 934 (4 Cir. 1963). As clear as this mandate is, however, it does not declare that a defendant is denied due process by the sole fact of his being allowed to plead guilty without there first being a formal adjudication of his sanity. United States ex rel. Smith v. Baldi, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549 (1953).

■ It is the opinion of this Court that the state has no Constitutional duty, even when aware of a defendant's history of mental difficulty, to order on its own motion a pretrial sanity hearing. The petitioner was represented by counsel, yet made no request for a sanity determination. So, even assuming as did the parties, that there was a presumption of insanity flowing from a past commitment,[1] the Constitution does not require the state court itself to initiate such a hearing.

Apparently petitioner's conduct during the original proceeding indicated to all persons concerned, including the court, that he was capable of advising and assisting counsel and was aware of the nature of the charges filed against him.

■ The failure of the state court to reach the issue of competency, however, does not preclude the defendant from seeking collateral relief in the Federal courts. The District Court, when presented with the issue of petitioner's sanity at the time of the state court proceedings should proceed as with any other alleged Constitutional violation. It should hear the evidence and make a determination on the merits of petitioner's contention. Frame v. Hudspeth, 309 U.S. 632, 60 S.Ct. 712, 84 L.Ed. 989 (1940); Ashley v. Pescor, 147 F.2d 318 (8 Cir. 1945); Byrd v. Pescor, 163 F.2d 775 (8 Cir. 1947); Owsley v. Cunningham, 190 F.Supp. 608 (E.D.Va.1961).

If the District Court determines that the defendant was incompetent at the time of the state court proceedings, the Constitution demands the conviction be set aside. However, if the District Court finds that the defendant was mentally competent during the state proceedings, this is tantamount to a finding of no Constitutional violation, and therefore the state conviction should be upheld. In short, the Federal court at this late date is free to make a factual determination of petitioner's competency at the time he appeared before the state trial court.

■ Although the law properly holds that an "insane" person may not be Constitutionally tried or convicted of crime, an additional problem presents itself. What definition of "insane"

---

1. There is considerable doubt, however, that this common law presumption exists in Nebraska. See Fisher v. State, 140 Neb. 216, 299 N.W. 501 (1941); Thompson v. State, 159 Neb. 685, 68 N.W.2d 267 (1955). The latter stated at p. 271 of 68 N.W.2d:

"Evidence of the commitment of a defendant to a hospital for the insane raises no presumption that the accused was at the time in question insane in the sense that he was not accountable for the act charged."

should be applied by the District Court when assessing a petitioner's mental condition at the time of his state trial? Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) sets forth the competency standard in Federal Criminal cases which reads:

"(T)he 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' "

State courts, on the other hand, apply different and varying standards to determine a defendant's fitness to proceed. When the Federal court is called upon by a habeas corpus petition to assess the mental condition of a state prisoner at the time of his trial, should the court apply the standard that was, or would have been, used by the state trial court, or should it apply the test applicable in Federal criminal cases?

The answer appears to us to be that the Federal standard for competency must be applied even though the original proceeding was before a state court. Since this is a Federally recognized right, its determination must be by Federal standards. It should not be subject to the varying and perhaps lesser standards established by state law. It must be above dilution and equally applicable as a minimum guarantee to citizens of all states.

■ Therefore, the minimum Constitutional standard to be applied whenever the issue of mental competency is

brought before the Federal courts is the standard set forth in Dusky v. United States. Presumptions and burdens of proof in regard to this competency, created by the law of the state wherein the petitioner was convicted, however, if reasonable, should be followed by the Federal courts. Leland v. State of Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952); Thomas v. Cunningham, 313 F.2d 934 (4 Cir. 1963).

With this background, it is our opinion that the United States District Court was correct in concluding that the state court's inaction on the sanity issue was not, in itself, violative of due process. The District Court had jurisdiction at this time to pass upon the issue of the incompetency of the petitioner at the time of his state conviction and correctly applied the standard set forth in Dusky v. United States.[2]

■ Because of petitioner's prior adjudication of insanity, the District Court placed the burden of proving competency upon the state. In view of the inconclusive position of Nebraska law in regard to this burden of proof, even if the court's holding was incorrect, an unnecessary burden was placed upon the state which certainly could not prejudice petitioner.

■ Although the petitioner presented some expert testimony, the District Court placed great weight on the expert opinion of one Dr. Burdzick, a psychiatrist who had the opportunity of seeing petitioner at least once a week during the two years petitioner was confined to the Kansas mental hospital.[3]

---

2. Part of Judge Van Pelt's opinion (244 F.Supp. 445) is as follows:

"It is therefore the holding of the court that Noble during October, November and December of 1959 was able to and did understand the proceedings against him including the nature and seriousness of the offenses of which he was charged and his plea thereto, and had the ability to and did in fact consult with his attorney and assist in his defense. In reaching these conclusions the court has examined the statement given by Noble upon his arrest and the proceedings against him in the District Court of Lancaster County, Nebraska. The court feels the statement and proceedings generally demonstrate an understanding upon the part of petitioner and comprehension of the proceedings and charges together with his guilt thereto."

3. "The court is of the opinion that the testimony of Dr. Burdzick projecting his opinion ahead four or five months is of greater value in determining Noble's sanity at that time than the qualified opinions of other experts as to his condition two years prior to the examination they conducted."

The tenor of the doctor's testimony was that the petitioner's condition had been improving and at the time of his escape the prognosis was fair to good, petitioner was in contact with reality and displayed the power of reasoning.

In addition to the expert testimony, the petitioner's attorney at the time of trial, the prosecuting officer and the police officer all testified as laymen to petitioner's competency and ability to understand and aid in the proceedings against him. The District Court placed considerable weight on this testimony.[4]

In our opinion not only were the District Court's legal conclusions essentially correct, his findings of fact on the issue are supported by the evidence and are not "clearly erroneous" as is required by Rule 52(a) Fed.R.Civ.P. to justify a reversal.

Petitioner's complaint over not having court-appointed counsel in his post-conviction proceedings in the Nebraska state courts presents no issue for review. There is no Constitutional right for a party to have appointed counsel in post-conviction applications. These proceedings are civil rather than criminal in nature, and Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), specifically confined its decision to the appointment and assistance of counsel in the original criminal trial proceedings and a direct appeal therefrom.

The State of Nebraska in 1965 adopted an effective post-conviction remedy procedure. The absence or inadequacies of the procedure prior to that date will lay the basis for a finding that petitioner has exhausted his state remedies as required by Title 28 U.S.C.A. § 2254.

However, infirmities in a state's post-conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction. A full, fair, and complete hearing was had in the United States District Court, which is all that petitioner could have obtained if the state procedure had been adequate.

The same reasoning applies to petitioner's contention of denial of due process in the State Supreme Court's failure to allow handwritten briefs. This failure affords a basis for application to the Federal Courts for an adjudication of claimed Constitutional deprivations or infringements but cannot in itself be a basis for relieving defendant of his conviction. Obviously, this is a matter of procedure, the defect of which was corrected by a full evidentiary hearing in the United States District Court.

Judgment affirmed.

---

4. "The court also gives more than slight weight to the lay opinions rendered by the three men heretofore named who are competent in their fields of law enforcement and administration and experienced in their connection with criminals and criminality."