**UNITED STATES of America ex rel. Norman Benjamin PARSON**

v.

**Raymond W. ANDERSON, Warden.**

**Habeas Corpus No. 67.**

United States District Court
D. Delaware.

Oct. 30, 1967.

Supplemental Opinion Jan. 24, 1968.

Irving Morris, of Cohen, Morris & Rosenthal, Wilmington, Del., Jackson W. Raysor, Georgetown, Del., for petitioner.

William Swain Lee, Richard G. Elliott, Jr., Deputy Attys., Gen., for the State of Delaware, Wilmington, Del., for respondent.

## OPINION

LAYTON, District Judge.

Norman Benjamin Parson (hereafter defendant) was indicted for the first degree murder of Kathleen Rae Maull on the night of January 31, 1964. He was tried and convicted on three counts: (1) murder while attempting to perpetrate a rape; (2) homicide with express malice aforethought by stabbing; (3) homicide with express malice aforethought by beating. Upon appeal, the verdict below was affirmed as to Count 1 but set aside as to Counts 2 and 3 for failure of any proof as to premeditation.[a] Defendant's petition for certiorari was denied by the United States Supreme Court on February 20, 1967.[b]

Thereafter, on April 18, 1967, defendant filed a petition for habeas corpus in this Court alleging:

(1) His written confession was introduced into evidence without proper instructions to the jury;

(2) The written confession was involuntary under the circumstances under which it was taken;

(3) He was not advised of his right to an attorney at the time his confession was given;

(4) The trial judge erred in refusing to order a change of venue;

(5) The verdict of the jury was ambiguous and fatally defective in that the jury returned a general verdict of guilty but the Supreme Court of Delaware, having set aside the two counts as to premeditated first degree murder, it is now impossible to determine whether the verdict of guilty was not based solely upon these two counts or one of them.[1]

As the result of a number of conferences between counsel and the Court, it was stipulated that the entire transcript of the Superior Court trial be incorporated into the record. It was further stipulated that all orders of the trial judge pertaining to psychiatric examinations of the petitioner prior to trial be made a part of the record. Finally, it was stipulated that the reports of all psychologists and psychiatrists made pursuant to the trial judge's orders be made a part of this record.

The explanation of the psychiatric reports is that, prior to trial, defendant's counsel petitioned the trial court and obtained leave to have defendant examined from the point of view of ascertaining whether he knew the difference between right and wrong (the M'Naghten test) at the time of the commission of the offense. The conclusions of the psychiatrists were that defendant did know the difference between right and wrong with

---

a. Reported at Parson v. State, 222 A.2d 326 (Del.1966).

b. Reported at Parson v. Delaware, 386 U.S. 935, 87 S.Ct. 961, 17 L.Ed.2d 807 (1967).

1. This ground has now been abandoned.

the result that counsel abandoned any attempt to interpose a plea of insanity as a defense. As appears hereafter, however, a reading of these reports demonstrates that defendant was definitely mentally disturbed to some degree at the time of trial.

At one of the early conferences, one of defendant's counsel requested that defendant be subjected to psychiatric examination, basing his request upon defendant's alleged abnormal conduct while discussing the details of this proceeding with him at the New Castle Correctional Institution. At that time, the basis for the request was not related to any ground in support of the petition for habeas corpus itself, but, rather, to the questions (1) whether, if defendant were presently incompetent, he was capable of conducting this proceeding without the intervention of a guardian or next friend on his behalf and (2) the difficulty of conducting this proceeding without the full cooperation of the client. The State did not object to a psychiatric examination for this limited purpose.

However, thereafter, defendant's counsel moved to add insanity at the time of trial as an additional ground for the issuance of the writ. This was allowed over the State's objection.[2] The basis for this last point lay both in fact and law. Counsel pointed to the reports of examinations of defendant by two psychiatrists and a psychologist appointed by the trial judge prior to trial, as well as the testimony of one of them at trial, as demonstrating some definite degree of existing mental illness. They further cite a number of federal and State authorities bearing on the point which hold that an insane person cannot validly be tried or convicted of a crime.

The principle that an insane person cannot be tried or convicted of a crime has been imbedded in the law of English speaking peoples for over two centuries. As long ago as 1765, it was laid down in 4 Blackstone's Commentaries 24 that:

"Also, if a man in his sound memory commits a capital offense, and before arraignment for it, he becomes mad, he ought not to be arraigned for it; because he is not able to plead to it with the advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried: for how can he make his own defense."

An exhaustive review of this point is found in Freeman v. People, 4 Denio 9, 47 Am.Dec. 216 (N.Y.1847), where it was said:

"The true reason why an insane person should not be tried, is, that he is disabled by an act of God to make a just defense if he have one. As said in 4 Harg.Stat.Tr. 205, 'there may be circumstances lying in his private knowledge, which would prove his innocency, of which he can have no advantage because not known to the persons who shall take upon them his defense.' The most distinguished writers on criminal jurisprudence concur in these humane views, and all argue that no person in a state of insanity, should ever be put upon his trial.  *  *  * " (p. 219)

And the Supreme Court of Pennsylvania in Commonwealth v. Ragone, 317 Pa. 113, 176 A. 454 (1935), stated in this connection:

"The proposition that a person admittedly insane cannot legally be tried is so sanctioned by common sense that it needs the citation of no formal authorities for its support." (p. 459)

This rule is laid down in innumerable State authorities. See 44 C.J.S. Insane Persons § 127, and cases cited in footnote 62. It has been incorporated into the statute law of many states. For instance, a Virginia statute makes the test of defendant's ability to withstand trial to be whether "the person to be

2. The State's objection here is difficult to follow. At one point in the record it seems to represent a general objection— at another, it seems to rest on the proposition that three years having gone by, it would be impossible now to determine defendant's mental state as of the time of the trial.

tried is in such a mental condition that his confinement in a hospital for the insane, or colony for the feebleminded, for proper care and observation is necessary to attain the ends of justice." Code of Virginia, 1960, Sec. 19.1–228 as quoted in Thomas v. Cunningham, 313 F.2d 934, 938 (C.A.4th 1963).[3]

The federal Courts have always adhered to this principle. In Pate v. Robinson, 383 U.S. 375 at page 378, 86 S.Ct. 836, at page 838, 15 L.Ed.2d 815 (1966), the Supreme Court of the United States said:

"The State concedes that the conviction of an accused person while he is legally incompetent violates due proccess, Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956), *and that State procedures must be adequate to protect this right.*" (Emphasis supplied.)

And again at page 386 of 383 U.S., at page 842 of 86 S.Ct.:

"Having determined that Robinson's constitutional rights were abridged by his failure to receive an adequate hearing on his [mental] competence to stand trial, we direct that the writ of habeas corpus must issue * * *."

Squarely on this point are Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Thomas v. Cunningham, 313 F.2d 934 (938) (C.A.4th 1963); and Noble v. Sigler, 351 F.2d 673 (676) (C.A.8 1965); certiorari denied, 385 U.S. 853, 87 S.Ct. 98, 17 L.Ed.2d 81 (1966).

And it logically follows that where reasons exist for believing that defendant may be mentally ill prior to trial, a preliminary hearing on the issue of his sanity must be held before trial. As stated generally in 23 C.J.S. Criminal Law § 940(2)a:

"Accordingly, it is the general rule, both at common law and under some statutes, that, while one indicted or informed against is presumed sane until his present sanity is called in question in some manner raising a doubt in the court's mind as to his sanity, if the court either before or during the progress of the trial, from observation or from the pleading or suggestion of counsel, has facts brought to its attention which raise a doubt as to the present condition of accused's mind in this respect, or if the court is of the opinion that there are reasonable grounds for believing that accused is insane at the time of the trial or unable to conduct his defense, *the question should be determined by a separate proceeding before another step is taken.*" (Emphasis supplied.)

Freeman v. People, supra, 4 Denio 9, 47 Am.Dec. at 219; Vol. 24 Md.Law Review 442. Thomas v. Cunningham, supra. The great majority of the states now have enacted statutes, for example, see: Purdon's Penna. Statutes, 50.1222; Ann. Code of Maryland 59:7 (amended 1967); N.Y.Code of Criminal Procedure Sec. 658; N.J.Stats.Ann. 2A:163–2. In fact, England incorporated the common law rule into statute as long ago as the year 1800. See 39 and 40 George III C. 94, Sec. 2.

As previously remarked, the reports of the psychologist and psychiatrists made before trial pursuant to examinations ordered by the trial court, clearly indicated that, while defendant knew the difference between right and wrong at the time of the offense charged, nevertheless, at the time of trial he was mentally ill to some degree. Dr. Harry S.

---

3. Curiously, Delaware has a statute, Title 11 Del.Code § 4703, which provides for the case where a defendant becomes mentally ill after a conviction but before sentence, but not covering the situation where the defendant is insane, or claims insanity, at the time of trial. Nor has research disclosed any decisions by a Delaware Court on the point. It is of interest to note, however, that legislation bearing directly on this question has been proposed. See Proposed Delaware Criminal Code, Sec. 213.

Howard, Director of the Department of Mental Health, stated in his report:

"If as the writer believes, the defendant has actually repressed all of this material, then it would be most difficult for him to assist his attorney in the preparation and presentation of his defense. With this in mind it is our opinion that he be transferred to the Delaware State Hospital for further observation. * * * "

Dr. W. A. Byrne, a Psychiatrist, said in his report:

"It is my opinion at this time he may be mentally ill. However, I would like to reexamine him in October * * * before making any definite conclusions. July 20, 1964."

The report of Dr. Weintraub, a Psychologist, was this:

"Psychiatric treatment is advised. Evidence points to hospitalization."

At the trial, Dr. Byrne testified in part:

Q. "In the course of conducting the interview procedures which are the technique of your profession, did you encounter in relation to occurrences the early morning hours of February 1, 1964, any inability to recall?

A. A marked inability to recall that was quite similar to what I listened to this morning [Parson's testimony at trial].

  *   *   *   *   *   *

Q. Based upon your specialized training and your experience in your profession, did you form an opinion as to whether this failure to recall was genuine?

A. I felt that it was.[4]"

None of the doctors found unequivocally that defendant was insane or even what the degree of his mental illness was. But the reports advised that defendant be hospitalized in the State mental hospital and subjected to further psychiatric examination and treatment. Moreover, Dr. Byrne's testimony at trial suggested that defendant was suffering from a form of amnesia. And even conceding that in many authorities above cited the pretrial evidence of the defendant's mental incompetency was stronger than here, it still remains that the preliminary conclusions in the reports of these doctors were sufficiently clear to raise a doubt in a reasonable mind as to defendant's mental ability to withstand trial. The need for a preliminary hearing as to defendant's mental state was thus plainly apparent but the record discloses that no attempt was made to call the situation to the attention of the trial judge or move for a pretrial hearing to determine defendant's mental status.

Under such facts, a petition for certiorari will lie from convictions for federal crimes and for habeas corpus from convictions for state crimes for the purpose of determining whether the defendant received a fair trial under the 14th Amendment. Thus, in Frame v. Hudspeth, Warden, 109 F.2d 356 (C.A. 10th, 1939), Rev'd., per curiam, 309 U.S. 632, 60 S.Ct. 712, 84 L.Ed. 989 (1940), where defendant was convicted of a federal crime, the United States Supreme Court per curiam reversed the 10th Circuit Court of Appeals which had affirmed the conviction of a defendant, because the trial judge, despite prisoner's prior record of insanity, merely talked to him at length before trial and, apparently, decided he was sane:

"The motion to proceed *in forma pauperis* is granted. The petition for certiorari is also granted and * * * the judgment of the Circuit Court of Appeals is reversed and the cause remanded to the District Court for the purpose of making a full inquiry into the mental status of the petitioner at the time he entered the pleas of guilty." (309 U.S. p. 632, 60 S.Ct. p. 712)

4. The psychiatric testimony introduced at trial by the defense was solely for the purpose of attempting to demonstrate that the defendant's confession was not free and voluntary but, nevertheless, throws additional light on his mental condition at the time of trial.

**570**

See also Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956).

And where the conviction was in a State Court, a petition for habeas corpus will lie. Thus, in Pate v. Robinson, supra, defendant was convicted of murder in the State Courts of Illinois. The Supreme Court of Illinois affirmed, holding that defendant's counsel had not requested an insanity hearing prior to trial, thus waiving the point; that the evidence failed to raise sufficient doubt as to his competence to require the trial judge to raise the issue on his own motion; and that the evidence did not raise a reasonable doubt as to his sanity at the time of the offense. The Supreme Court after reviewing the evidence indicating that defendant might well have been mentally ill at the time of trial, said:

> "We believe that the evidence introduced on Robinson's behalf entitled him to a hearing on this issue. The [trial] court's failure to make such inquiry thus deprived Robinson of his constitutional right to a fair trial [under the 14th Amendment]. * * *" (383 U.S. p. 385, 86 S.Ct. p. 842)

> "Having determined that Robinson's constitutional rights were abridged by his failure to receive an adequate hearing on his [mental] competence to stand trial, we direct that the writ of habeas corpus must issue." (383 U.S. p. 386, 86 S.Ct. p. 842)

Similarly, in Thomas v. Cunningham, supra, defendant pled guilty to certain felonies in the State Courts of Virginia. At the time of trial, counsel presented evidence that his client was insane and requested a hearing as to his mental capacity to stand trial. The trial Court denied the request and defendant then pled guilty. The United States District Court dismissed defendant's petition for habeas corpus but the 4th Circuit Court of Appeals reversed, saying in part:

> "What emerges from this humane legislation is the assurance by the Commonwealth that one whose mental capacity to cope with the exigencies of a trial is in doubt shall not be put in jeopardy without a preliminary inquiry into his present mental condition. It is this right to a judicial determination of fitness to stand trial that Thomas allegedly asserted * * *. *Since due process* [14th Amendment]. *entitled him to have the matter thoroughly 'canvassed'* and the Commonwealth provided the means for it, the federal court is obliged to scrutinize the procedure by which his claim was rejected." (Emphasis supplied.) (313 F.2d p. 939)

Nor does it matter whether the request for a pretrial insanity hearing was made and denied preliminarily, or the matter overlooked at trial and later raised on habeas corpus. In this connection, in Noble v. Sigler, supra, a closely analogous case, a defendant was convicted of sodomy, kidnapping and being a habitual criminal and sentenced for life by a Kansas State Court. Subsequently, he became insane and was committed to the State mental hospital from which he escaped. While a fugitive, he was charged with, and pled guilty to, the crimes of kidnapping, sodomy of a young girl and being an habitual criminal in Nebraska. Though his escape from the insane asylum was known to the Nebraska Court, the prosecuting officer and defendant's counsel, the latter did not raise the insanity issue [5] at the time of his sec-

5. Though represented by counsel, there was no discussion of the question of waiver. Indeed, the defense of waiver in this sort of case seems to have been foreclosed by Pate v. Robinson, supra, 383 U.S. at page 384, 86 S.Ct. at page 841, and see dissenting opinion at page 388, 86 S.Ct. at page 843 where Justice Harlan, while dissenting on the main issue, nevertheless, as to the waiver point said:
"The Court appears to hold that a defendant's present incompetence may become sufficiently manifest during a trial that it denies him due process for the trial court to fail to conduct a hearing on that question on its own initiative. I do not dissent from this very general proposition, and *I agree also that such an error is not waived by failure to raise it.* * * *" (Emphasis supplied.)

ond sentence for life by the Nebraska Court. His petition for habeas corpus was heard by the United States District Court for the District of Nebraska, and after a full hearing on the issue of defendant's insanity at the time of his trial and plea, that Court found that he was sane in the sense that he understood the nature of the proceedings against him and was able to assist counsel at the time of trial (or plea). Defendant then appealed and the United States Circuit Court for the Eighth Circuit affirmed.

It held that an insane person could not be validly tried and convicted of a crime:

"In this appeal, petitioner points out that he was committed to a Kansas state mental institution and was still under court declaration of insanity when he escaped and committed the crime for which he was incarcerated in Nebraska. The Nebraska Court was aware of this declaration of insanity, yet proceeded to convict and sentence him. Petitioner argues that he has the benefit of a presumption of continuing insanity and that for the state court to continue without a sanity determination in the face of this presumption renders the subsequent proceedings void."

"There is no doubt but that the common law rule declaring that an 'insane' person cannot be validly tried or convicted of a crime is enforceable against the state by way of the 'due process clause' of the Fourteenth Amendment. Massey v. Moore, 348 U.S. 105, 75 S. Ct. 149, 99 L.Ed. 135 (1954); Thomas v. Cunningham, 313 F.2d 934 (4 Cir. 1963). * * *" (351 F.2d p. 676)

Continuing, it held that the failure of the State court to determine the issue of insanity did not prevent defendant from seeking relief on habeas corpus in a United States District Court:

"*The failure of the state court to reach the issue of competency, however, does not preclude the defendant from seeking collateral relief in the Federal courts.* The District Court, when presented with the issue of petitioner's sanity at the time of the state court proceedings should proceed as with any other alleged Constitutional violation. * * *" (351 F.2d p. 676) (Emphasis supplied.)

See also Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (384).[6]

Having determined that there was sufficient evidence to give warning that defendant might have been so mentally incompetent before trial as to entitle him as a matter of right under the 14th Amendment to have a preliminary determination of that issue, it remains to decide what is the proper course to follow. For the reasons hereafter given, it is the conclusion of this Court that the question of the mental fitness of this defendant to stand trial must be referred back to the Superior Court of Delaware to be determined after full hearing in accordance with such standards as that Court should see fit to formulate.[c] Clearly, it is not the function of a federal district court to make such a determination in the first instance. Rule 35 of the Criminal Rules of the Superior Court of Delaware, Del.C.Ann. provides an initial post-trial remedy by which a defendant can have corrected alleged violations of rights guaranteed under the 14th Amendment.[7] But the defendant

---

6. "The State insists that Robinson deliberately waived the defense of his competence to stand trial by failing to demand a sanity hearing as provided by Illinois law. But it is contradictory *to argue that a defendant may be incompetent, and yet knowingly or intelligently waive.*" (Emphasis supplied.)

c. With deference, this Court does not agree with the conclusion in Noble v. Sigler, supra, that the federal standard as to mental fitness at trial must apply in sanity hearings originating in State Courts.

7. "* * * A Prisoner in custody under sentence and claiming a right to be released on the ground that such sentence

has failed to pursue the remedy provided by Rule 35. Instead, he raises the insanity issue in this Court for the first time by way of a petition for habeas corpus. For this Court to crowd in and determine the question at this point would amount to an unwarranted abuse of power in the always delicate field of federal-state relations.

"[I]t would be unseemly in our dual system of government, for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation. Darr v. Burford, 339 U.S. 200 204, 70 S.Ct. 587, 94 L.Ed. 761 approved in Fay v. Noia, 372 U.S. 391 at 419–420, 83 S.Ct. 822, at 838, 9 L.Ed.2d 837."

Precisely on this point, the Third Circuit Court of Appeals has recently held that where a state has provided a suitable post-conviction remedy, a defendant must first exhaust that remedy before a federal district court may consider the point on a petition for habeas corpus.

"Coming now to our view that in the instant case the District Court further erred in not abstaining from acting on Singer's habeas corpus application because he had failed to exhaust the post-conviction remedy available to him in the Pennsylvania courts under the doctrine of Case v. State of Nebraska, supra [381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422]:

It was settled in Case v. State of Nebraska, supra, that where a state has a post-conviction statute providing for consideration of petitions alleging denial of federal constitutional rights that the state courts should be afford-

ed an opportunity to act with respect to the alleged denial."

\*　　\*　　\*　　\*　　\*　　\*

"Whether 'available' state remedies have been 'exhausted' is a threshold question in every case in which a state prisoner seeks federal habeas corpus relief." United States ex rel. Singer v. Myers, 3rd Cir., October 20, 1967, 384 F.2d 279.

In this cited decision, the Third Circuit Court quoted with approval the following language from Tyler v. Croom, 264 F.Supp 415 (E.D.N.C.1967) which, with certain additions in parenthesis, brings the case at bar squarely within its holding.

"Therefore, it is North Carolina (Delaware) not the federal habeas corpus court (United States District Court for Delaware) which shoud first provide [Relator] *with that which he has not yet had to which he is constitutionally entitled*—an adequate evidentiary hearing productive of reliable results concerning the effective assistance of counsel (concerning defendant's mental competence to stand trial) at his trial." (Emphasis supplied.)

It follows that this question must be raised in the Delaware Superior Court and a hearing [8] held which, necessarily, will require that Court to formulate proper standards governing the degree of mental competence necessary for a defendant to be able to stand trial for a criminal offense in this State.

The decision to direct a remand of this case after a full trial in the Superior Court and careful review by the Supreme

---

was imposed in violation of the Constitution \* \* \* or the United States \* \* may file a motion at any time in the court which imposed such sentence to \* \* \* correct the same."

8. Should that Court determine, based upon adequate psychiatric testimony, that it

is now too late to make a definitive determination as to defendant's mental state at the time of his trial three years ago, then the conclusion in Pate v. Robinson, 383 U.S. at page 387, 86 S.Ct. 836, may have to be considered.

Court of Delaware [9] has not been an easy one. However, the result must be measured, not by the atrocity of the crime, but, rather, the clear constitutional guarantee of two centuries standing that the question of a defendant's mental competence to stand trial, where in doubt, as here, must be determined before trial.

Accordingly, petitioner's motion for a psychiatric examination in support of the contention that he was mentally unfit to stand trial is denied. This Petitioner is directed to file a petition in the Superior Court of Delaware under Rule 35 for a determination of the issue of his competency at trial. Meanwhile, this Court will retain jurisdiction of this proceeding. However, it would seem impracticable to attempt to proceed further in this Court now, because not only is the insanity issue paramount, but the mental state of this petitioner at his trial might affect any final determination of the remaining grounds (except the issue of venue) on which this habeas corpus petition is based.

## SUPPLEMENTAL OPINION

On October 30, 1967, this Court concluded from an examination of the reports of psychologists and psychiatrists of the Petitioner Parson, prior to trial,[1] that there was a reasonable probability he was suffering from some form of mental illness at the time of his trial as the result of which he might not have been able fully to comprehend the nature of the proceedings against him or be able to assist his counsel in preparing and conducting his defense. See main opinion above.

Accordingly, for the reasons stated in the main opinion, Petitioner was directed to file a petition in the Superior Court of Delaware under Rule 35 for a determination of his competency at the time of his trial. In the meantime, the Court retained jurisdiction of this habeas corpus proceeding.

Thereafter, upon the authority of Pate v. Robinson, 383 U.S. 375, 387, 86 S.Ct. 836, 843, 15 L.Ed.2d 815 (1966), Petitioner filed a further motion praying that, despite the result reached in the main opinion, the writ should be granted for the reason that it is impossible for a psychiatrist to determine as of 1967 the mental competency of this Petitioner at the time of his trial over three years past.

This Court was aware of the implications of *Pate* vis-a-vis the case at bar at the time of the filing of its opinion on October 30, 1967. In fact, it cited from *Pate* at length and relied on it as authority for the proposition that an accused cannot stand trial unless mentally capable of understanding the nature of the proceedings against him and of assisting his counsel in making his defense. However, it was felt that the language of *Pate,* quoted in the footnote below, while sweeping in nature,[2] was not necessarily binding in this case because of certain factual differences not necessary now to relate. Nonetheless, to be certain of its position, the Court felt it desirable to hold a hearing at which psychiatrists would testify as to whether, in their opinion, it could now be determined from available records, supplemented by additional testimony, the Petitioner was, in fact, mentally competent at the time of his trial more than three years ago.

---

9. The insanity issue was not before the Supreme Court of Delaware.

1. Together with the testimony of one of them at trial to the effect that in his opinion defendant was then suffering from a type of amnesia.

2. "It has been pressed upon us that it would be sufficient for the state court to hold a limited hearing as to Robinson's mental competence at the time he

was tried in 1959 (6 years before). If he were found competent, the judgment against him would stand. But we have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial. * * * That Robinson's hearing would be held six years after the fact aggravates these difficulties." (In the instant case, 3 years have elapsed.)

After carefully considering the testimony of two qualified psychiatrists, one offered by Petitioner and one on behalf of the State, this Court finds:

(1) That Dr. Anstreicher, for the State, was of the qualified opinion that if the reports of the psychiatrists and psychologists [3] who examined Petitioner prior to trial revealed certain basic facts and conclusions (and this, as Petitioner's counsel brought out in cross-examination, is doubtful), then a psychiatrist as of today could determine Petitioner's mental condition as of three years ago.

(2) That Dr. Flaherty, for the defense, was of the qualified opinion that under optimum conditions, a qualified psychiatrist could now determine Petitioner's mental condition as of three years ago. However, Dr. Flaherty continued by saying that, in this case, it is next to impossible to believe that these optimum conditions would be found to exist.

██ Under the circumstances, this Court cannot conclude with any certainty that psychiatry is capable of concluding definitely as of today what Petitioner's mental condition was as of the time of his trial. Inasmuch as the psychiatric reports rendered just prior to his trial indicated a reasonable probability that Petitioner was mentally disturbed to some extent at the time, and no hearing having been then held to establish conclusively whether he was capable of realizing the nature of the charges against him and of aiding his counsel in making his defense and, further, since it cannot now be definitively determined what his mental condition then was, this Court feels bound by the conclusions reached in Pate v. Robinson at page 387, 86 S.Ct. 836. Accordingly, the writ of habeas corpus will be granted. Of course, it follows that the State will be granted a reasonable period for a re-trial of this cause.[4] Pate v. Robinson at page 386, 86 S.Ct. 836.

---

3. Both psychiatrists, Drs. Howard and Burns, and one psychologist are now deceased.

4. Subject, of course, if the Petitioner moves therefor, to a preliminary determination that he is now mentally capable of standing trial.