**Gary HONIE, Defendant below, Appellant,**

v.

**STATE of Delaware, Plaintiff below, Appellee.**

Supreme Court of Delaware.

Argued Jan. 17, 1975.

Decided April 9, 1975.

Peter M. Sieglaff of Potter, Anderson & Corroon, Wilmington, for defendant below, appellant.

David H. Erisman, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before DUFFY and McNEILLY, JJ., and TEASE, Judge.

McNEILLY, Justice:

Defendant appeals his conviction of assault with intent to murder and two counts of robbery on the grounds that the Court erred in failing to charge the jury on the law of accomplice as requested and that the Court erred in its denial of his motion for judgment of acquittal.

I

The evidence offered by the State at trial and argued on appeal shows the following as to defendant: The planning of criminal conduct which led to the crimes here involved began in North Carolina in September, 1972, John Richard Kirkman (Kirkman) picked up a hitchhiker named Joseph Cipolla (Cipolla). During the course of their conversation phone numbers and addresses were exchanged for the purpose of arranging a sale in Delaware of marijuana. After involving a financial backer, Harry Levi Stokes (Stokes), Kirkman came to Wilmington to purchase a quantity of marijuana from Cipolla. He arrived on October 22, 1972, and after determining the quality of a sample furnished by Cipolla, called Stokes who came the next day. The three agreed to meet that evening at the DeLaWarr Motel.

Cipolla had no intention of producing the marijuana. His plan was to rob or "rip-off" Kirkman and Stokes. To strengthen his position he contacted a friend, Gary Honie (Honie), defendant, who agreed to participate in the scheme. At Honie's direction they picked up a third man, Willie Williams (Williams). Honie introduced Williams to Cipolla, and they proceeded to Williams' home. He

picked up a .32 caliber pistol which was given to Honie. They then went to the DeLaWarr Motel, arriving at approximately 10:00 p. m. and met Kirkman and Stokes. Cipolla persuaded them to drive to an old abandoned farmhouse to effect the sale between Honie, who posed as the seller, and Kirkman-Stokes.

Cipolla and Honie rode together leading the way. Williams rode with Kirkman and Stokes. Previously Honie, Cipolla and Williams had agreed that they would all arrive at the farmhouse at the same time. When they were all together they were to pull their guns and demand the money from Kirkman and Stokes.

Upon arrival Cipolla parked his car approximately fifteen feet (15′) from the farmhouse as the other car was coming up a dirt road leading to the farmhouse lane. Cipolla and Honie got out of the car and walked to within approximately three feet (3′) of the back door of the farmhouse (as if on their way to get the marijuana) when a shot was fired. Turning around they saw Stokes on the ground. Cipolla drew a toy pistol from his pocket, pointed it at Kirkman, and told him it was a "stick-up". Honie at that time was standing behind Cipolla and to his left approximately eight feet (8′) from Kirkman. On direct examination Cipolla testified that he was "almost certain" Honie pulled his gun from his belt after he had pulled his own. Williams walked over to where Cipolla was holding Kirkman at "gunpoint" and said: "We have to kill them both", and shot Kirkman in the head from point blank range.[1] Cipolla and Williams took Stokes' coat and brief case and then went to Cipolla's car where Honie was already in the front seat. As they drove from the scene, Honie pulled the lining from Stokes' jacket, removed the money and threw the jacket out of the window. They proceeded to Williams' house where Honie returned the gun and divided the money among the three of them.

## II

At the conclusion of the State's case in chief and again at the end of trial defendant moved for judgment of acquittal on the ground that the evidence was insufficient to sustain a conviction. The motions were denied.

Defendant contends he was merely present at the scene; he says that he withdrew to Cipolla's car when the shooting and robbery began and did nothing to aid, assist, incite or encourage Cipolla's or Williams' criminal conduct.

Defendant further contends the Court erred in rejecting his requested instructions on two grounds, first that the instructions [2] did not make clear to the jury that mere presence at the crime is not enough to warrant a conviction of robbery and assault as an accomplice, and second that the instructions did not require the jury to find that Honie encouraged or incited the co-defendants by words, questions, looks or signs.

---

1. Kirkman survived and the information furnished by him led to Cipolla's arrest. He then implicated Honie and Williams.

2. The Court stated in part:
    "It is the law that where there is a crime committed and there are two, three or more people present, though one may take no particularly active part in the crime, yet if he is present, aiding, or counseling, encouraging or inciting the other or others, under the law of this State, he is equally guilty with the person or persons who actually commit the crime.

    "If you determine, after considering the evidence, that the defendant Honie was merely present at or near the scene of the crime, without aiding, abetting, counseling, encouraging or inciting the others, or participating in the crime, then it is your duty to find the defendant Honie not guilty.

    "Now, aiding, as used in the statute, refers to assisting and helping in the actual commission of the crime. It does not refer to participation after the crime is actually committed".

## III

Defendant argues that he withdrew from criminal activity when violence unexpectedly erupted immediately after Williams arrived at the farmhouse. Thereafter, he says, he was "merely present" and that is not enough to make him an accomplice. The argument is without merit for two reasons.

First, it is a law of this State that,

"... all persons who join together with a common intent and purpose to commit an unlawful act which, in itself, makes it not improbable that a crime not specifically agreed upon in advance might be committed, are responsible equally as principals for the commission of such an incidental or consequential crime whenever the second crime is one in furtherance of or in aid to the originally contemplated unlawful act."

State v. Norris, 44 Del. 267, 71 A.2d 755 (1950); State v. Winsett, Del.Super., 205 A.2d 510 (1964). See also Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 294, 35 L.Ed. 1077 (1892).

■ Considering the "totality of the circumstances" under which the defendant, Cipolla and Williams, planned and set into execution the ultimate robbery of Stokes and Kirkman, i. e., the presence of weapons, the time of night, the luring of the victims to the deserted farmhouse in the country, Honie's full participation and cooperation both before and after the actual shooting, and all other surrounding facts, shown in the record, we hold, that the rule of Norris, supra, applies. There was sufficient competent evidence from which the jury might conclude that since Honie joined together with Cipolla and Williams with a common intent and purpose to commit robbery under circumstances which made it not improbable that a crime not specifically agreed upon in advance (attempt to murder) might be committed, that the second crime, was in furtherance of

the first and therefore he was equally responsible as the principals who actually committed the crimes.

■ Second, there is evidence that defendant was not merely present at the scene. Thus, Cipolla testified:

"I think he (Williams) had a gun aimed at Richard Kirkman, and I pulled the gun that I had out and aimed it at Kirkman and told him if he moved I was going to shoot him, and then I think Gary pulled a gun, . . . . ."

And, he continued:

"Q How close were you to him as he (Kirkman) fell to the gound?

A Within three feet.

Q Where was Honie at this point?

A Approximately five feet further away from him.

Q Do you recall at this point whether or not Honie had his gun drawn?

A No, sir, I don't recall. I wasn't looking.

Q At any time after you got out of the car and before Kirkman was shot, did you notice if Honie had a gun out?

A The only time I'm almost certain that Gary Honie had a gun out was after I pulled that gun of mine out, and then I think he pulled his out.

Q Did you know where he had pulled it out of, or from, Honie?

A Approximately, I believe, it was more or less from his belt, like to right around this area.

Q And you are referring to left rib cage area?

A Yes, sir.

Q And belt area?

A I believe that is where it was."

Any uncertainty in Cipolla's testimony goes to its weight, but the jury could conclude

that Honie had a gun drawn at about the time Kirkman was shot and thus encouraged his colleague to continue with the shooting and the robbery.

The motions for judgment of acquittal were properly denied.

■ We are satisfied that the Court's instructions correctly and adequately propound the law and are warranted by the evidence.[3] Defendant's contentions are rejected.

Affirmed.

---

3. See 23A. C.J.S. Criminal Law § 1337, p. 923.