Willie James WILLIAMS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted June 17, 1977.

Decided Sept. 7, 1977.

Bertram S. Halberstadt of Murdoch &
Walsh, Wilmington, and Richard F. Rago of
Baumeister & Rago, Wilmington, for de-
fendant below, appellant.

Charles M. Oberly, III, State Pros., Wil-
mington, for plaintiff below, appellee.

Before HERRMANN, Chief Justice,
McNEILLY, Justice, and BROWN, Vice-
Chancellor.

McNEILLY, Justice:

In this appeal from defendant's Superior
Court jury conviction of murder in the first
degree, assault with intent to murder, two
counts of robbery, and four counts of pos-
session of a deadly weapon during the com-
mission of a felony, the only issue remain-
ing is the propriety of the Superior Court's
retrospective determination on remand of
defendant's competency at the time of his
trial.

The other grounds sought for relief previ-
ously having been ruled to be without mer-
it, will be discussed in the text of this
opinion.

II.

The facts leading to defendant's indict-
ment and trial are set forth in detail in this

Court's reported opinion in the appeal of co-defendant, Gary Honie; they will not be repeated here except as may be necessary; *Honie v. State*, Del.Supr., 336 A.2d 568 (1975).

During the pretrial stages of this case defendant's court appointed counsel developed an atmosphere of mutual trust and cooperation with defendant in the preparation of his defense of alibi. As a matter of routine, because of the nature of the charges, counsel considered the possibility of requesting a mental examination. This consideration was laid aside, however, because of the lack of any prior history of a mental problem and defendant's apparent factual understanding of the proceedings against him. It was also apparent that he clearly understood the strength of the state's case and the difficulties facing his defense counsel in presenting an alibi defense. To this end defendant's alibi testimony was rehearsed repetitively. Additionally, there was extensive preparation for cross-examination by the prosecution of a photograph of defendant in the State's possession which was taken routinely as defendant made a 9:00 A.M. bank deposit the morning after the crime. Defense counsel anticipated that the prosecution would attempt to establish defendant's identity as one of the perpetrators of the crime by defendant's hat pictured in the photograph, it appearing to be similar to the hat described by the only surviving victim as that worn by the gunman who shot him, and by defendant's deposit of nine one hundred dollar bills, claiming them to be his share of the one hundred dollar bills taken from the deceased victim's coat.

Defendant and co-defendant, Gary Honie, were convicted after nine days of trial. From Monday of the first week through Tuesday morning of the second week, the trial proceeded without incident. Tuesday afternoon the State rested its case, co-defendant, Gary Honie, declined to testify or offer witnesses in his defense, and defendant's mother was called as defendant's first alibi witness. It was after defendant's mother testified that counsel first noticed a change in defendant. He sat staring blank-

ly, and, when called to testify, startled everyone by shouting his refusal to take the witness stand. The Trial Judge recessed the trial until defendant succumbed to his counsel's urging to take the stand. Leaving counsel table defendant fell to the floor and crawled to the witness stand yelling incoherently. The Trial Judge immediately called another recess and considered sending defendant to Delaware State Hospital for observation. Because the defendant informed the Trial Judge that he did not need hospitalization, and that his actions resulted from fear only, trial was resumed. According to defense counsel, defendant's entire direct testimony which followed the resumption of trial deviated from the repetitive rehearsals, requiring much prodding by counsel and many leading questions to put his alibi story in proper perspective. On cross-examination defendant parried the prosecutor's questions, refusing to give direct or proper answers to the anticipated prejudicial questioning in spite of the pretrial preparation and the Trial Judge's admonition to give direct answers, which defendant acknowledged that he clearly understood he was required to do.

Because of defendant's unruly conduct the next morning, before the commencement of the trial, the Court called upon Psychiatric Emergency Services to send a psychiatrist to examine defendant. Defendant refused to be examined, attacked one of his guards and intimidated the doctor who was there prepared to conduct a time limited psychiatric examination. Rather than abort the trial for a thirty day period suggested as being necessary to thoroughly examine defendant, the Trial Judge elected to proceed. The Trial Judge indicated that if defendant were found guilty, an immediate commitment would be ordered for a complete psychiatric examination to determine defendant's competence to stand trial. If a finding of incompetence resulted, the Trial Judge stated that the judgment of guilt would be vacated and a mistrial declared.

Before proceeding, the Court spoke with defendant and, with defense counsel's con-

currence, stated for the record that defendant apparently was able to continue and control his behavior. That conclusion was confirmed by the absence of any outburst or other incident while the next five alibi defense witnesses concluded that trial day of testimony although defense counsel later indicated that defendant was incommunicative during that entire period of the trial.

The next morning there remained only one rebuttal witness, summations and jury instructions. Defendant's behavior became uncontrollable, resulting in his being barred from the courtroom. Trial was then concluded without defendant being present, and the jury returned guilty verdicts. The defendant was immediately transported to Delaware State Hospital for a "complete psychiatric examination," remaining there under observation for more than two months.

Reporting to the Trial Judge, Dr. Irfan H. Erdag, Chief of Forensic Service at the Delaware State Hospital, opined that defendant's emotional behavior resulted from the stress and strain of the Court proceedings, but that throughout, he was able to understand the nature and quality of his acts and the consequences of the offenses. Following receipt of this report no formal hearing was held.

On appeal, it appearing that a *bona fide* doubt of defendant's competency to stand trial had arisen because of defendant's bizarre and unruly conduct, and that no hearing was held, either during or after trial, this Court remanded the case to the Superior Court with instructions to hold a hearing and to make a determination, if possible, as to the legal competency of defendant at the time of his trial. A hearing was thereafter held by another judge of the Superior Court. Testimony was given by Dr. Erdag, by Dr. T. R. Huxtable, Jr., another Delaware State Hospital psychiatrist, defense counsel, one of the prosecutors, another deputy attorney general who had been sitting in the Court Room as a spectator during the trial, and Dr. George E. Voegele, a psychiatrist employed on behalf of defendant. Documentary evidence was made a part of the record, including pertinent portions of the trial transcript, a release summary from the records of Delaware State Hospital signed by Dr. Erdag, a psychologist's report prepared by Dr. C. A. Galliani, Chief Psychologist at Delaware State Hospital, opinion letters from Dr. Huxtable to the State Prosecutor and Dr. Voegele. With the exception of Dr. Voegele, who concluded that it was impossible to retrospectively determine defendant's competency at the time of his trial after a lapse of two and one half years, the experts were unanimous in concluding that they had sufficient data available to make a reliable retrospective determination and that defendant at the time of his trial did, in fact, have the ability to consult with his lawyer rationally as well as a rational and factual understanding of the proceedings against him. Basing his decision upon the record before him the reviewing Judge found defendant legally competent at the time of his trial.

### III.

The test of competency to stand trial is whether or not the defendant has sufficient present ability to consult with his lawyer rationally and whether he has a rational as well as a factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S., at 402, 80 S.Ct. 788, 4 L.Ed.2d 824. *Parson v. State*, Del.Supr., 275 A.2d 777 (1971).

In the case at bar it is admitted that at the commencement of trial, defendant was competent. But as Blackstone wrote that one who became "mad" after the commission of an offense should not be arraigned for it "because he is not able to plead to it with that advice and caution that he ought," similarly, if he became "mad" after pleading, he should not be tried, "for how can he make his defense?" 4 W. Blackstone Commentaries, 24. Likewise, when the record discloses that a *bona fide* doubt of the competency of a defendant is raised during trial, as in this case, due process requires the Trial Judge to hold a hearing and make a determination as to the

legal competency of the defendant to stand trial *United States v. Makris*, 535 F.2d 899 (1976), *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), *Parson v. Anderson*, D.Del., 280 F.Supp. 565 (1967); 11 *Del.C.* § 404(a).*

█ To be meaningful, a retrospective hearing on competency must include a full review of the facts of the case, taking into account the quantity and quality of available data and the opinion of experts. Time is a relevant factor, though not determinative, nor an insurmountable obstacle even after the passage of considerable time. A concurrent determination is preferred, but if there is sufficient data available, a reliable retrospective determination may be made. *United States v. Makris, supra.* In this case we find sufficient evidence in the trial record and in the competency hearing record to support the retrospective finding by the Court of legal competency to stand trial.

### IV.

As other grounds of appeal, the defendant asserts that:

(1) The Trial Court erred in denying defendant's motion for a separate trial. As to this ground, we find no abuse of discretion. *Garner v. State*, Del.Supr., 1 Storey 301, 145 A.2d 68 (1958); *Jenkins v. State*, Del.Supr., 230 A.2d 262 (1967).

█ (2) The Trial Court erred in refusing to admit into evidence the testimony of a licensed polygraph examiner and other related charts, questionnaires and reports, and also in not granting defendant's motion to require the State to enter into a stipulation based on a retesting of the defendant. As to this ground, the Trial Court properly stated the settled, but previously unreported, law of this State that in the absence of

a stipulation of the parties to the contrary, the results of polygraph tests are inadmissible when offered in evidence for the purpose of establishing the guilt or innocence of one accused of a crime, whether the accused or the prosecution seeks its introduction.

(3) The Trial Court erred in refusing to admit written and oral exculpatory evidence presented by defendant. As to this ground, we find the Trial Court properly excluded the statements offered as inadmissable hearsay.

(4) The Trial Court erred in not suppressing evidence obtained as the result of a search of defendant's house based upon a search warrant issued without probable cause. As to this ground, no error of law appears.

(5) That the Trial Court erred in admitting the living victim's in-court identification of defendant following an improper pre-trial photographic identification. As to this ground under the totality of the circumstances on the record before us, we find no reversible error. *Brown v. State*, Del. Supr., 329 A.2d 153 (1974).

(6) That the Trial Court erred in its instructions to the jury on "identification" and its failure to utilize defendant's requested instruction. As to this ground, we find no abuse of discretion nor error of law.

\* \* \* \* \* \*

Affirmed.

---

* 11 *Del.C.* § 404(a) provides in its pertinent part as follows:

"Whenever the Court is satisfied, after hearing, that an accused person, because of mental illness or mental defect, is unable to understand the nature of the proceedings against him, or to give evidence in his own defense, or to instruct counsel on his behalf, the Court may order the accused person to be confined and treated in the Delaware State Hospital until he is capable of standing trial."