# IN THE SUPREME COURT OF THE STATE OF DELAWARE

RHAMIR D. WAPLES, §
§
    Defendant Below, § No. 161, 2020
    Appellant, §
§ Court Below—Superior Court
    v. § of the State of Delaware
§
STATE OF DELAWARE, § Cr. ID No. 1506014219A (S)
§
    Plaintiff Below, §
    Appellee. §

Submitted: January 8, 2021
Decided: February 23, 2021

Before **SEITZ**, Chief Justice; **VALIHURA** and **MONTGOMERY-REEVES**, Justices.

## ORDER

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The appellant, Rhamir D. Waples, filed this appeal from the Superior Court's denial of his first motion for postconviction relief under Superior Court Criminal Rule 61.[1] We find no merit to Waples's claims and affirm the Superior Court's judgment.

(2)    In June 2015, a grand jury indicted Waples for more than seventy crimes, including two counts of first-degree murder that were committed during a

---

[1] *State v. Waples*, 2020 WL 1918139 (Del. Super. Ct. Apr. 15, 2020).

January 2014 home invasion. The grand jury also indicted seven other individuals, including Waples's brother Richard Robinson, for their involvement in the crimes. The charges arose from a series of home invasions and robberies in 2014.

(3) The Superior Court scheduled separate trials for the defendants. Waples's charges arising from the January 2014 home invasion were severed from the charges arising from the crimes committed after January 2014.[2] The charges arising from the January 2014 home invasion proceeded to trial in February 2017.

(4) On March 8, 2017, the jury found Waples guilty of two counts of first-degree murder, fifteen counts of possession of a firearm during the commission of a felony ("PFDCF"), one count of home invasion, two counts of first-degree robbery, and one count of second-degree conspiracy. Waples's sentencing was originally scheduled for May 2017, but was later continued so that it would occur after the trial of a co-defendant.

(5) On December 5, 2017, Waples filed a motion to dismiss or, in the alternative, for a new trial. In the motion, Waples argued that the State had violated *Brady v. Maryland*[3] by failing to produce an agreement to recommend a sentence of

---

[2] This severance occurred after Waples's counsel raised a potential conflict based on his previous representation of a State witness to the crimes that occurred after January 2014.
[3] 373 U.S. 83 (1963).

time served for a co-defendant who testified against Waples and the other defendants.[4] The State opposed the motion.

(6) At a January 18, 2018 hearing, the parties informed the Superior Court that they had engaged in extensive discussions to resolve the case in a way that would moot the pending motion. Waples's counsel advised that he had recommended Waples accept the plea offered by the State, but Waples was not willing to do so. The Superior Court advised Waples that his counsel was very experienced, but also emphasized that it was for Waples to decide whether or not to accept the plea offer. The Superior Court stated that it would issue a decision on the motion shortly.

(7) On February 8, 2018, the Superior Court held a hearing to announce the denial of the motion to dismiss or, in the alternative, for a new trial. The Superior Court also issued a written decision. The Superior Court held that the State should have disclosed the agreement to recommend time served for the co-defendant who testified against Waples, but that this failure to disclose additional impeachment evidence did not undermine confidence in the outcome of the trial in light of the other evidence presented.

(8) On February 22, 2018, the Superior Court granted the parties' request to vacate Waples's convictions, which was conditioned upon Waples's acceptance

---

[4] The State had produced a plea agreement in which the State agreed to recommend a twelve-year sentence for this co-defendant in exchange for his truthful testimony against the other defendants.

3

of a guilty plea. Waples pleaded guilty to second-degree murder as a lesser-included offense of first-degree murder, PFDCF, home invasion, and second-degree conspiracy in exchange for dismissal of the other charges. The Superior Court imposed the following sentence that was recommended by the State: (i) for second-degree murder, with credit for 857 days previously served, twenty-five years of Level V incarceration, suspended after the fifteen year minimum mandatory for decreasing levels of supervision; (ii) for PFDCF, four years of Level V incarceration; (iii) for home invasion, fifteen years of Level V incarceration, suspended after six years for two years of Level III probation; and (iv) for second-degree conspiracy, two years of Level V incarceration suspended for one year of Level III probation. On March 5, 2018, the Superior Court modified the sentence to include restitution and to increase the credit time to 934 days.

(9) Waples did not file a direct appeal, but did file a timely motion for postconviction relief under Superior Court Criminal Rule 61. Waples alleged that his counsel was ineffective for failing to obtain mental health records or a mental health evaluation that would have reduced his culpability. Waples also alleged that his counsel was ineffective for failing to prepare him for sentencing. Waples filed a motion for appointment of postconviction counsel, which the Superior Court granted.

4

(10)   Postconviction counsel filed a motion to withdraw, stating that he found no meritorious issues to raise.  On April 15, 2020, the Superior Court denied Waples's motion for postconviction relief and granted postconviction counsel's motion to withdraw.[5]  The Superior Court held that Waples waived an insanity defense by knowingly, intelligently, and voluntarily pleading guilty.[6]  The Superior Court also found that Waples provided nothing to support his claims of mental health issues and that the record reflected effective representative by his trial counsel.[7]  This appeal followed.

(11)   Waples filed a motion to stay the appeal so that he could present records concerning his mental health issues to the Superior Court.  This Court denied the motion, holding that Waples failed to show why he could not have obtained and presented the records to the Superior Court before the denial of his motion for postconviction relief.[8]

(12)   On appeal, Waples argues that his trial counsel was ineffective for failing to investigate and use his mental health issues and lack of competency for the benefit of his defense.  Waples does not raise his claim that trial counsel was ineffective for failing to prepare him for sentencing and has therefore waived that

---

[5] *Waples*, 2020 WL 1918139, at *5-6.
[6] *Id.* at *5.
[7] *Id.* at *6.
[8] *Waples v. State*, 2021 WL 56688 (Del. Jan. 7, 2021).

5

claim.[9]  Waples also raises new claims that: (i) postconviction counsel failed to provide his mental health records to the Superior Court; (ii) the State failed to disclose exculpatory evidence concerning a co-defendant's agreement to testify in exchange for the State recommending a sentence of time served; and (iii) trial counsel failed to investigate or pursue a new trial when the State withheld exculpatory evidence.

(13)  With the exception of Waples's claim concerning his trial counsel's effectiveness regarding his mental health and competency issues, the State contends that the Court should strike Waples's remaining claims because he did not raise them in the first opening brief filed on July 27, 2020.  Waples raised all of his claims, including the claim raised in his first brief, in a second amended opening brief filed on August 20, 2020.  It appears that Waples filed his first brief before he received the briefing schedule that set August 27, 2020 as the due date for his opening brief. It also appears that Waples may have filed his first amended opening brief before he received the briefing schedule.

(14)  We understand the State's frustration in the filing of multiple opening briefs and having a shortened time to respond to later-raised claims.  This situation could have been avoided had the Clerk's Office sought clarification from Waples regarding his multiple filings or had the State asked the Court for clarification

---

[9] Supr. Ct. R. 14(b)(vi)(A)(3); *Murphy v. State*, 632 A.2d 1150, 1152 (Del.1993).

regarding the operative brief and the appropriate deadline to respond. Under the circumstances here, we decline to strike the claims of a *pro se* appellant who may have been uncertain on how to proceed after filing an opening brief and then receiving a briefing schedule that set a later due date for the opening brief.[10]

(15) We next address the argument Waples raised below—that his trial counsel was ineffective for failing to investigate and use his mental health issues and lack of competency for the benefit of his defense. The Court reviews the Superior Court's denial of postconviction relief for abuse of discretion and questions of law *de novo*.[11] Before addressing any substantive issues, the Court considers the procedural requirements of Rule 61.[12] The procedural requirements of Rule 61 do not bar timely claims of ineffective assistance of counsel.[13]

(16) To support a claim of ineffective assistance of counsel, Waples must demonstrate that: (a) his counsel's conduct fell below an objective standard of reasonableness; and (b) there is a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty but would have insisted on going to trial.[14]

---

[10] *See, e.g., Hester v. State*, 2011 WL 3717051, at *1 (affording "measure of leeway" to *pro se* defendant and considering supplements to opening brief that could have been stricken).
[11] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).
[12] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[13] *Bradley v. State*, 135 A.3d 748, 759 (Del. 2016).
[14] *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Albury v. State*, 551 A.2d 53, 59 (Del. 1988).

7

Although not insurmountable, there is a strong presumption that counsel's representation was professionally reasonable.[15]

(17)   The record does not support Waples's claims that his trial counsel was ineffective for failing to obtain records or a mental health evaluation that would have reduced his culpability for his crimes.  To be found not guilty by reason of insanity, a defendant must show that as a result of mental illness or serious mental disorder he lacked substantial capacity to appreciate the wrongfulness of his conduct.[16]  To be found guilty but mentally ill ("GBMI"), a defendant must show that as a result of a mental illness or serious mental disorder he lacked the willpower to refrain from committing the criminal act.[17]  A defendant is competent to stand trial if he has "has sufficient present ability to consult with his lawyer rationally" and "has a rational as well as a factual understanding of the proceedings against him."[18]

(18)   As the Superior Court recognized, Waples offered nothing in the proceedings below to support his claims of mental illness or lack of competency.[19]  The transcripts of Waples's multiple appearances in the Superior Court, including a bail hearing, a lengthy trial, and multiple post-trial hearings do not reflect any disruptive or irrational behavior by Waples.  The evidence presented at trial, which

---

[15] *Albury*, 551 A.2d at 59.
[16] 11 *Del. C.* § 401(a).
[17] *Id.* § 401(b).
[18] *Williams v. State*, 378 A.2d 117, 119-20 (Del. 1977).
[19] *Waples*, 2020 WL 1918139, at *5.

8

included the testimony of the getaway driver and the confession of Waples's brother, showed a scheme by multiple individuals to commit an armed robbery of a suspected drug dealer. There was nothing to suggest that the crimes could have resulted from the acts of a mentally ill individual who lacked substantial capacity to appreciate the wrongfulness of his actions or who lacked the willpower to refrain from committing the crimes. Nor were there any signs that Waples was unable to consult rationally with his counsel or understand the proceedings against him.

(19) Waples's claims of mental health issues that reduced his culpability and his lack of competency are further belied by his knowing, intelligent, and voluntary guilty plea. In the Truth-in-Sentencing Guilty Plea Form, Waples indicated that he freely and voluntarily decided to plead guilty, no one forced him to plead guilty, and he understood he was waiving certain constitutional rights. Waples claims for the first time on appeal that the plea forms incorrectly state that he was never a patient in a mental hospital and had never received treatment for mental health issues, but he signed those forms and told the Superior Court that he had provided honest answers.

(20) During the guilty plea colloquy, Waples affirmed that no one, including his counsel, forced him to plead guilty, he understood that he was waiving certain constitutional rights, he was satisfied with his trial counsel's representation, he understood that the Superior Court was not required to follow the sentencing

recommendation, and that he was guilty of second-degree murder, PFDCF, home invasion, and second-degree conspiracy. Waples did not express any confusion or lack of understanding during his guilty plea colloquy with the Superior Court. Absent clear and convincing evidence to the contrary, which he has not identified, Waples is bound by his representations during the guilty plea colloquy.[20] The Superior Court did not err in concluding that Waples's guilty plea was knowing, intelligent, and voluntary.

(21) Waples has not shown that his trial counsel acted unreasonably by failing to pursue a defense based on his mental health or a lack of competency. Nor has Waples shown a reasonable probability of a different outcome, but for his trial counsel's alleged errors. Waples obtained a clear benefit from the guilty plea. Unlike many of those who plead guilty, Waples had already gone to trial. He had heard the evidence presented against him and unsuccessfully defended himself against the charges. By pleading guilty, Waples reduced his minimum sentencing exposure from more than fifty years (he faced twenty-five years to life for each of the first-degree murder convictions)[21] to less than twenty-five years. He reduced his maximum sentencing exposure from two life sentences plus hundreds of years to

---

[20] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).

[21] Waples was seventeen at the time of the January 2014 crimes, so he faced a minimum sentence of twenty-five years, rather than life imprisonment, for each of the first-degree murder convictions. 11 *Del. C.* § 4209A. The State noted this during Waples's plea colloquy.

one life sentence plus fifty-two years. As recommended by the State and requested by Waples during his sentencing, the Superior Court ultimately imposed a sentence of forty-six years Level V incarceration, suspended after twenty-five years for decreasing levels of supervision.

(22) Waples did not raise his remaining claims in the Superior Court. "We generally decline to review contentions not raised below and not fairly presented to the trial court for decision" unless we find "that the trial court committed plain error requiring review in the interests of justice."[22] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[23] There is no plain error here.

(23) Waples argues that his postconviction counsel was ineffective for failing to introduce his medical records. The records reflect that Waples was diagnosed at the age of nine (shortly after his father died) with attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder, and depression. He was prescribed medication, primarily for his ADHD and later for his depression.

---

[22] *Turner v. State*, 5 A.3d 612, 615 (Del. 2010) . *See also* Supr. Ct. R. 8.
[23] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

Even if postconviction counsel had submitted those records, they do not appear to raise a viable mental health defense or questions about Waples's competency.

(24)    As to Waples's claim that the State violated *Brady* by failing to produce its agreement to recommend a time-served sentence for a co-defendant who testified against him, Waples waived that claim by entering into a knowing, intelligent, and voluntary guilty plea.[24]  Finally, trial counsel was not ineffective for failing to pursue the *Brady* claim as Waples contends because trial counsel filed a motion to dismiss or, in the alternative, for a new trial based on this claim.  The Superior Court's denial of Waples's motion for postconviction relief should be affirmed.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

---

[24] *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2003).